Goodrich v. McClary.

REVERSED AND REMANDED.

---

ORSON GOODRICH, PLAINTIFF IN ERROR, V. JOHN S. McCLARY, DEFENDANT IN ERROR.

**Evidence:** ADMISSION OF PAROL TESTIMONY TO EXPLAIN WRITTEN CONTRACT. Parol evidence is admissible to supply an omission in a written contract, which, in case of a disagreement between the parties, would otherwise be ambiguous and wholly inexplicable.

——: ——. And this in no wise trenches upon the general rule, that the terms of a contract must not be changed or varied by oral testimony.

——: ——. G. and M. entered into an agreement, by which G. agreed to deliver to M. his cutting of wool on a day named; but the contract being silent as to the number and kind of sheep which G. owned at the time it was made, *held* that parol testimony was admissible to show that fact.

**Examination of witnesses:** FORM OF QUESTION. Although the form of a question put to a witness is objectionable, yet if the answer does not respond directly to the question, but gives the facts, as in response to an interrogatory properly put, the error is without prejudice and will be disregarded.

**Damages.**  In an action upon a contract for the delivery of a certain amount of wool, the true rule of damages is the difference between the contract and market price at the time and place of delivery.

ERROR to the district court of Madison county.

Goodrich was defendant in the court below, and, judgment being rendered against him, brought the cause here by petition in error. The facts are fully set forth in the opinion of the court.

*W. A. Marlow,* for plaintiff in error

The court erred in overruling defendant's motion to strike out of plaintiff's petition in the court below, irrelevant matter, as appears from the bill of exceptions; also, in allowing evidence to go to the jury over defendant's objection, tending to change and vary the terms of the written contract sued on in this action. The same rules of law that apply to the first error complained of, will apply to the second.

I. Irrelevant matter is such as is inadmissible in evidence, or not material to the facts constituting the cause of action or defense. If the contract sued on is definite, certain and unambiguous, then the matter sought to be stricken out of plaintiff's petition could not be given in evidence on the trial of the case. If the contract is definite, certain and unambiguous, then the court erred in allowing any evidence to go to the jury, over defendant's objection, tending to change and vary the terms of the contract. We claim that the contract is neither uncertain, indefinite, or ambiguous; that it is as certain as the English language can make it.

The law presumes that everything that was agreed upon and understood between the parties was embodied in the written contract. It is not claimed by McClary that there was any mistake or fraud in the transaction. He expects to recover on the written contract, not as it is, but asks

the court to allow him to add to and change it to suit his own convenience. There is no rule of construction that will apply in this case. The very idea of construction implies a previous uncertainty as to the meaning of the contract, for when this is clear and unambiguous, there is no room for construction and nothing for construction to do. Courts will not, by construction of a contract, defeat the express stipulations of the parties. 2 *Parsons on Contracts*, 500. If the learned judge was correct in his rulings in the court below, our opinion is that it is lost time and a waste of paper, to reduce contracts to writing for the purpose of making more definite and certain as to what the parties intend. The statute of frauds, requiring certain contracts to be in writing, is a humbug, if the court was correct in its ruling in this case, for the reason that it would be impossible to draft a contract that could not be changed and varied by parol evidence. The law does not require men to do foolish things. By examining the evidence in this case, we must come to the conclusion that McClary and Goodrich did a very foolish thing, when they drafted the contract on which this action is founded, the plaintiff being allowed to vary the written contract from the one sued on.

II. The court erred in allowing evidence to go to the jury, over defendant's objection, of the market value of wool at Norfolk, Nebraska, on the fifth day of June, 1872, and other places, for the reason that the plaintiff in his petition claims general damages only. Damages which necessarily and generally result from the injury complained of, may be recovered without any special statement of their nature, but such proximate and natural damages, as result from the injury, but which are not the inevitable and necessary result, must be specially stated in the petition, otherwise the plaintiff will not be permitted to prove them on the trial. *Swan's Plead-*

*ings and Precedents*, 229. 1 *Chitty's Pleadings*, 338. *Johnson v. Matthews*, 5 *Kansas*, 118. *Vanderslice v. Newton*, 4 *New York*, 130. 2 *Greenleaf on Evidence*, 261. There is no question as to the measure of damages in this case; the rule of damages being the difference between the purchase price and the market value of wool at Norfolk on the fifth day of June, 1872, *provided special damages be claimed*. The petition claims *general damages*. The plaintiff is entitled to recover under the petition as it stands, all damages which are the natural, necessary, and inevitable result of the injury complained of. Wool is a marketable article; to-day it may be worth twenty-five cents per pound, and to-morrow, one dollar per pound, and *vice versa*.

*Munger & Ghost*, for defendant in error, presented, among others, the following points:

I. The evidence introduced to show the number of sheep, and number of pounds of wool, did not change, vary, or contradict the terms of the written contract, but only explained what was meant and intended by the parties, in the use of the words, " *his cutting of wool.*" Such evidence was proper. 1 *Greenleaf on Evidence*, 325.

II. If the contract sued upon is definite, certain, and unambiguous, then one fleece of wool of two pounds would fill the contract, and McClary would be required to pay *one hundred dollars*, at the time the same was delivered, *or fifty dollars per pound*. We do not think this or any other court will lend its aid to defeat the obvious intention of the parties. It is evident from the terms of the contract, in providing that McClary should pay Goodrich one hundred dollars at the time of the delivery of the wool, and the balance when he received returns from the same, that the words, " his cutting of

wool," were used, intended, and understood by the parties, as expressing *proximately* an amount of wool, understood and contemplated by the parties at the time of the execution of the contract, and were not used or intended to, and do not *abstractly* express the intention of the parties.

III. All evidence introduced to show the market price of wool at other places than Norfolk, was brought out by plaintiff in error, on cross-examination of McClary, and by his own testimony; hence *he* cannot complain.

IV. Is the difference between the contract price and market price, on the day of delivery, in actions like this, *special damages* in such a sense as to require *special pleading?* The best, and in fact the only method by which to determine this question, is to enquire, what the reasons are for requiring special damages to be alleged in any case. An examination of all the authorities, we think, fully supports the doctrine, that where the damages are the necessary result, or are legally inferred from the facts stated, *or if the defendant is sufficiently apprised of the plaintiff's claim*, from such statement of facts, then they are termed general and may be recovered under the general plea of *ad damnum*. *Sedgwick on the Measure of Damages, Fourth Edition* 682, *note* 1. Now to apply this rule to the case at bar, the measure of damages is the difference between the contract price and the market price at Norfolk, on the day on which the wool was to have been delivered; hence can it be claimed that under the pleadings the defendant was not apprised of the extent and nature of plaintiff's claim, when the law has so *definitely* settled that the difference in price as above stated, is the only damage which can be legally claimed by the plaintiff?

Our position, that the damages recovered in the court

below are proper damages, under the general plea and without further pleading, has been settled and fully sustained by the authorities. *Burrel v. New York and Saginaw Salt Co.*, 14 *Mich.*, 34. *Hallock v. Belcher*, 42 *Barbour*, 199.

LAKE, CH. J.

McClary sued Goodrich in the court below to recover damages alleged to have been sustained by him in consequence of the failure and refusal of Goodrich to deliver a quantity of wool which he had sold to McClary.

A very brief and crude memorandum of the contract entered into for the delivery of the wool, is attached to the petition and is as follows:

" Agreement made this 8th day of April, 1872, between Orson Goodrich and J. S. McClary. That Orson Goodrich delivers his cutting of wool to J. S. McClary, by June 5th, 1872, at Norfolk, Nebraska, at 38½ cents per pound, the understanding that on delivery of wool at Norfolk, to advance one hundred dollars, and the bal. as soon as gets return from said wool.

Signed this 8th day of April 1872.

Advanced on the above, five dollars.

(Signed.)      ORSON GOODRICH.

            J. S. McCLARY.

It is further alleged that the wool thus contracted for, was that which was then growing on Goodrich's entire flock of sheep, numbering about four hundred and seventy-five head; that by reason of the failure to deliver the wool, the plaintiff McClary was damaged to the amount of five hundred dollars.

The defendant, Goodrich, in his answer admits the making of the contract, but alleges that he duly tendered the wool, which McClary refused to receive.

The case was tried to a jury who returned a verdict for McClary for the sum of ninety-one dollars and seventy-six cents, upon which, after a motion for a new trial was overruled, judgment was duly rendered, to reverse which, the cause is brought to this court.

Several exceptions were taken to the rulings of the court, during the progress of the case; but we notice only those which we deem important; and these may be included under two heads.

1. Those which relate to the admission of parol testimony in explanation of the memorandum, and

2. Those which relate to the rule of damages.

It is clearly shown by the evidence that soon after making this contract, and before shearing his sheep, Goodrich sold his entire flock to one Thomas, of Fremont, thus disabling himself to comply with his agreement. Why this sale was made does not distinctly appear, but it is quite probable that an advance in the price of wool may have had something to do with it. But whatever may have been the inducement, it is enough for us to know that it was voluntary on his part, and that he purposely put himself in a position to violate his agreement and thereby damage McClary.

It is urged upon our attention, with a good deal of earnestness, that the words, " *his cutting of wool* " should be construed to mean such wool alone as Goodrich should actually shear from sheep which he happened to have on hand at the time of shearing, whether they were few or many, and that no testimony should have been given as to what particular sheep, or the number thereof, were intended by the parties.

To such a construction we cannot assent. We think it is clear that both parties intended by the use of these words, to include all the wool grown upon all the sheep which Goodrich had on hand when the contract was made, unless

decreased by some unavoidable cause, and without fault on his part.

We must hold, therefore that it was important to know the number and kind of sheep, which Goodrich owned at the date of this contract, and inasmuch as the memorandum is silent on this point, resort to parol testimony was strictly proper. In holding thus we in no wise trench upon the rule, so urgently invoked by counsel for plaintiff in error, that the terms of a written contract must not be changed and varied by oral testimony. It does not change the contract but supplies an omission, without which, in case of disagreement of the parties, it would be ambiguous and wholly inexplicable.

It is true that the form of the question put to McClary is objectionable. He was asked to give his "understanding of what was meant by the words, *cutting of wool*." This was entirely immaterial, and the objection should have been sustained; but inasmuch as the answer did not respond directly to the question, and gives the facts as they transpired, the conversation between the parties on the point in dispute, the error was without prejudice and must be disregarded. His answer was that "the contract was made with reference to a flock of from four hundred and sixty to four hundred and seventy head of sheep, which Goodrich then owned."

As to those exceptions which go to the rule of damages recognized by the court in the admission of testimony, it is only necessary to say, that the true rule of damages is the difference between the contract and market price, at the time and place of delivery, and that we fail to discover any error in this particular.

From a careful examination of the record, we are convinced that if either party has reason to complain it is not the plaintiff in error, most certainly, but rather the defendant in error because of the smallness of the damages which the jury gave him. When a person takes upon

himself the responsibility of a deliberate violation of his engagements, he must not be surprised if he finds courts and juries quite ready to compel him to make good the loss which he thereby occasioned.

JUSTICES GANTT and MAXWELL concurring, the judgment must be affirmed.

JUDGMENT AFFIRMED.