W. D. POST, PLAINTIFF IN ERROR, V. ALEXANDER GARROW ET AL., DEFENDANTS IN ERROR.

1. **Contracts:** TIME OF PERFORMANCE. When the day of performance of contracts other than instruments upon which *days of grace* are allowed, falls on *Sunday*, that day is not counted, and compliance with the stipulations of the contract on the next day (*Monday*) is deemed in law a performance. *Salter v. Burt,* 20 Wend., 205.

2. ———: PETITION IN SUIT ON. Where in an action on a written contract a copy of the contract is attached and referred to in the petition, a statement of the terms of the contract in the body of the petition will not be stricken out, on motion, as redundant nor as irrelevant matter.

3. ———: FORFEITURE. For the purpose of effecting a forfeiture of money advanced on a contract which has not been performed, the party claiming such forfeiture must show a readiness and willingness on his part to keep and perform the contract in every particular.

4. Instructions considered and approved.

5. Contract for Sale of Cattle: EVIDENCE: TENDER. In the case of a contract for the sale and delivery of cattle at so much per lb. or cwt., when, upon the day appointed for the execution of the contract, the seller refuses to weigh and deliver the cattle and declares the contract at an end, in an action by the buyer for damages for the non-delivery of the cattle, *Held*, Not incumbent on the plaintiff to prove a *tender* of the purchase money.

ERROR to the district court for York county. Tried below before NORVAL, J.

*France & Harlan*, for plaintiff in error, cited: 2 Benjamin on Sales, § 1054. *Metz & Albrecht*, 52 Ill., 491. *Clark v. Dales*, 20 Barb., 42. *Porter v. Rose*, 12 Johns., 209. *Garret v. Gonter*, 42 Penn. State, 143. *Kitzinger v. Sanborn*, 70 Ill., 146.

*M. L. Hayward* and *Scott & Gilbert*, for defendants in error, cited: *Avery v. Stewart*, 2 Conn., 69. *Barrett v. Allen*, 10 Ohio, 426. *Salter v. Burt*, 20 Wend., 205. *Barnes v. Eddy*, 12 R. I., 25. 2 Parsons on Cont., 178 and 179—4th Ed. 2 Hill, 378, note *b*. *Brooklyn Oil Refinery Co. v. Brown*, 38 How., 449.

COBB, CH. J.

The principal question in this case is, whether a contract for the sale of cattle, "to be delivered at Bradshaw station on or before May 20, 1883," May 20, 1883, being

Sunday, became due and terminated on that day, or did it continue alive and capable of being executed during the whole of the following Monday.

The cases cited by counsel for defendants in error seem to settle, to my satisfaction at least, the law to be, "That," in the language of Gould, J., in the leading case of *Avery v. Stewart, Sup.*, "as *Sunday* cannot, for the purpose of *performing* contracts, be regarded as a day in law, it is as to that purpose to be considered as stricken from the calendar, though *intervening Sundays* are, doubtless, to be counted as in all other computations of time, because they are not appointed for the *performance* of any act. And this rule applies to all time contracts except those where, under the statute or the law merchant, days of grace are allowed."

The day for the performance of the contract sued upon, then, being Sunday, the true day for its performance and termination was Monday, the 21st day of May, 1883.

The contract contains a further provision in the following words: "Said steers to be weighed at feed lots any time in afternoon before 6 o'clock." Upon this provision and the evidence applicable thereto the plaintiff in error, in his brief, raises the question that, even if the defendants in error had all of the 21st day of May in which to receive and pay for the cattle, the terms of the contract providing that the cattle should be weighed before 6 o'clock being also applicable to Monday the 21st, the plaintiffs were not in time to claim the benefit of said contract. It is probably sufficient to say upon this point that the evidence being conflicting as to the precise point of time at which the agent of the plaintiffs arrived at the place where the cattle were, ready to witness the weighing, and the jury having found for the plaintiffs, it must, for the purposes of this opinion, be assumed that said agent arrived there and met the defendant at five minutes before 6 o'clock of the 21st day of May, by railroad time, which, in 1883, was some-

what faster than sun time. The only possible ground, then, upon which plaintiff in error can claim a forfeiture of the contract is, that at the time of the arrival of the agent of the plaintiffs at the place where the cattle were, there did not remain sufficient time to complete the weighing of the cattle before 6 o'clock. It is not clear, in any event, whether the true meaning of the contract is that the weighing of the cattle should be completed before 6 o'clock. Probably its terms would be fully complied with upon the weighing being commenced before 6, to be completed in good faith. And that construction would certainly be given it, when, as in this case, the former construction would involve a forfeiture. According to the evidence it would take from a half to three-quarters of an hour to weigh the cattle. On that day the sun set at ten minutes after seven o'clock. Had the weighing commenced at five minutes before six, it would have been certainly completed more than a half hour before sundown.

It seems from the bill of exceptions that on this day, the 21st day of May, the cattle were two miles south of Bradshaw. There is no evidence as to where they were at the time of the making of the contract, nor as to what "feed lots" were contemplated by the use of that language in the contract. True, it would be presumed that the cattle were, on the 21st day of May, in the same feed lots as at the date of the contract, were it not that on the 7th day of April, as shown by exhibit K, plaintiff in error wrote to Garrow Bros., among other things, "My feeder leaves middle of next week, and I must move the cattle then." The language of the contract providing for the delivery of the cattle "at Bradshaw station on or before May 20," and again "said steers to be weighed at feed lots any time in afternoon before 6 o'clock," would seem to me, in the absence of any explanation, to indicate that the steers were then in feed lots at Bradshaw station.

It must be borne in mind that the plaintiff in error had

received three hundred dollars of the purchase money for the cattle in question. This money he claims as a forfeit by reason of his having complied with the terms of the contract in every particular on his part, while the defendants in error have failed to comply with the terms of the contract. By the terms of the contract he agreed to deliver the cattle at Bradshaw station on or before May 20, 1883, at buyers' option. He could not technically comply with this contract without having the cattle at Bradshaw station ready to be delivered on that day, or that day being Sunday, on the next day, unless he was prevented by some act of the defendants in error. And had the defendants in error failed to be present either in person or by agent at the time fixed upon by another clause of the contract for weighing the cattle, would that be such an act or omission on their part as would enable the plaintiff in error to claim the fulfillment of the contract on his part without having the cattle at Bradshaw station at all? Possibly there may be something in the usages or necessities of the business of buying and selling fat cattle to take the case out of the general rules and principles of law, but if so, it is not indicated by the language of the contract, or shown by the evidence.

Upon the trial the defendant moved to strike out certain matter from the plaintiff's petition as irrelevant and redundant, and the overruling of this motion is assigned for error. Without discussing the question whether this court would reverse the judgment for the overruling of said motion by the district court, even were it never so erroneous, I think that the said motion was properly overruled. The theory of the motion seems to be, that the plaintiff having referred to the contract, and attached a copy of it to the petition, then any statement of the terms of the contract in the petition was irrelevant and redundant. The practice of attaching copies of written instruments to petitions doubtless is based upon the provisions of section 124 of

the Code. But even in cases where, under the provisions of that section, it is necessary that a copy of an instrument be attached to a pleading, and filed therewith, the pleader is not necessarily thereby excused, much less precluded, from stating the facts upon which his action or defense is predicated.

The demurrer was also properly overruled. There were five causes of demurrer alleged therein. Four of them are abandoned, or at least not relied on in the brief. The third ground, "That said petition does not state facts sufficient to constitute a cause of action," cannot be sustained. The allegation of the petition, "That at the time said cattle were to be delivered plaintiffs went to Bradshaw station, where said cattle were to be delivered, and not finding the defendant or the cattle there, went to his, defendant's, house and yard, and there demanded of him said cattle so sold to them, and then and there offered to pay him for the same, but defendant then absolutely refused to let plaintiffs have said cattle or any part thereof, and wholly failed and refused to keep his said contract, and he has ever since failed and refused, and now refuses, to comply with said contract," etc., is a good assignment of a breach of the contract by the defendant, and of willingness and readiness on the part of the plaintiffs to comply with their part of it. The law of *tender* does not arise in the case.

With other instructions given by the court to the jury on the trial the following were given, which are assigned for error by plaintiff in error :

" 10. In an action for breach of an executory contract to deliver personal property, in the absence of fraud or stipulation to the contrary, the rule is actual compensation. The injured party may recover his loss sustained.

" 11. In such case, if the value of the property sold has advanced, the damage is the difference between the contract price and the market price at the time and place of deliv-

ery, and in case of payment by the buyer of all or part of the purchase price he is entitled to such difference between the contract and market prices, in addition to the sum paid on the contract, and seven per cent interest on the sum paid on the contract from the breach thereof."

Whatever might be said of the 10th instruction, as standing alone, and as applicable to a different state of proof, upon the evidence in this case, and considered in connection with the 11th instruction, it fairly expresses the law, as I understand it.

Plaintiff excepts to instructions 5, 6, and 12, and makes the point in his brief that in them the court calls the attention of the jury to only a part of the facts introduced to make out the defendant's case, and excludes other facts material to the issue made by the defendant. Instructions 5 and 6 refer to the claim on the part of the defendant that he had bought the cattle back from the plaintiffs. But I do not think that there was any evidence of a second contract between the parties to go to the jury. But if there was, and the defendant was dissatisfied with the charge submitting that part of the case to the jury, on the ground that it did not comprehend the whole of it, or go far enough, he should have presented an instruction to the court embracing the law applicable thereto as he understood it. Upon such instruction being presented and refused, the point could be presented to this court, otherwise I don't think it can.

As to instruction number 12, it simply tells the jury that in case they find for the plaintiffs they shall assess the amount of their recovery according to the rule announced in the last instruction (No. 11).

Plaintiff in error makes the point that the court ought also to have instructed the jury as to the measure of damages applicable to the counter-claim of defendants. Upon that point, in addition to what is above stated as to the necessity of a party who is dissatisfied with an instruction,

for the reason that it does not go far enough, of presenting a proper instruction to the court to supply such deficiency, I will add that, as in my view the evidence did not even tend to prove the defendant's counter-claim, for the court to have laid down rules for the guidance of the jury in case they should find for the defendant on such counter-claim would have tended to mislead and confuse, and not to assist them in the discharge of their duty.

Plaintiff in error also complains of the refusal of the court to give in charge to the jury the following instruction requested by him:

"It is a rule of law that in sales of property, unless otherwise expressed, it is implied that the seller may retain the possession until the price is paid, and where a day certain is fixed upon within which the consideration is to be paid and the property delivered, payment or a tender thereof within the time limited must be made, or the seller cannot be compelled to part with his property; and the court therefore instructs the jury that if they find from the evidence that the plaintiff did not make a tender of payment until after the 20th day of May, 1883, at 6 o'clock in the afternoon of said day, then the tender of plaintiffs was too late, and gave them no right to take the cattle, and the jury should find for the defendant."

There are many good reasons for the refusal to give this instruction. It is not applicable to the evidence in the case. It assumes that the contract should have been executed on the 20th, although that day was Sunday; and it assumes that it was the duty of the plaintiff to make a tender to the defendants after he had refused to weigh the cattle and declared the contract at an end. We have already seen that such is not the law.

Having carefully examined the points made by plaintiff in error in his brief upon the several questions of the admission and rejection of testimony, whether the verdict

44

is sustained by the testimony, and whether the damages are excessive, I find no reversible error.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.