DENVER, T. & G. R. Co. v. HUTCHINS & HYATT.

[FILED MARCH 17, 1891.]

1. **Sale:** BREACH OF CONTRACT FOR: MEASURE OF DAMAGES. Where the seller of personal property fails and refuses to deliver the same to the buyer, the measure of damages for a breach of contract is the difference between the contract price and the market value of the property at the time and place where it should have been delivered.

2. **The cross-petition,** set out at length in the opinion, *held,* not to state a cause of action.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Harwood, Ames & Kelly,* for plaintiff in error, cited: *Howe Mach. Co. v. Bryson,* 44 Ia., 159; *Griffin v. Colver,* 16 N. Y., 490; *Blanchard v. Ely,* 21 Wend. [N. Y.], 342; *Wilson Mach. Co. v. Sloan,* 50 Ia., 367; *Frazer v. Smith,* 60 Ill., 145; *Allis v. McLean,* 48 Mich., 428; *Brigham v. Carlisle,* 78 Ala., 243; *Union Refining Co. v. Barton,* 77 Id., 148; *Fleming v. Beck,* 48 Pa. St., 309; 2 Parsons, Contracts, 458, 459; *Wakeman v. Mfg. Co.,* 101 N. Y., 205.

*Billingsley & Woodward, contra,* cited: 2 Sedgwick, Damages, 200, 606, note 1; *Burrell v. Salt Co.,* 14 Mich.,

34; *Laraway v. Perkins,* 10 N. Y., 371; 3 Parsons, Contracts [7th Ed.], 184; *Hadley v. Baxendale,* 26 Law & Eq. [Eng.], 398; *Fairchild v. Rogers,* 32 Minn., 269; *Booth v. Mill Co.,* 60 N. Y., 490; *Salvo v. Duncan,* 49 Wis., 154; *Messmore v. Shot Co.,* 40 N. Y., 426; *White v. Moseley,* 8 Pick. [Mass.], 356; *Passinger v. Thornburn,* 34 N. Y., 634; *Parks v. Norris Co.,* 54 N. Y., 586; *Richmond v. R. Co.,* 33 Ia., 422.; *Doolittle v. McCullough,* 12 O. St., 367; *Masterton v. Brooklyn,* 7 Hill [N. Y.], 61; *Fiegel v. Latour,* 81 Pa. St., 450; *James v. Adams,* 8 W. Va., 568; *Loud v. Campbell,* 26 Mich., 239; *Cunningham v. Dorsey,* 6 Cal., 21; *Hoy v. Gronoble,* 34 Pa. St., 9; *Miss., etc., Broom Co. v. Prince,* 34 Minn., 74; 1 Sedgwick, Damages, 275, 316, 336, 347, 451; Eggleston, Damages, secs. 366–540; Field, Damages, [2d Ed.], secs. 244–255; Thompson, Trials, 2062; 2 Field's Lawyer's Briefs, secs. 460, 461, 464, 465; *M. & St. P. Ry. Co. v. Kellog,* 94. U. S., 469; *McAfee v. Crofford,* 13 How. [U. S.], 447; *Pittsburg Steel Co. v. Hinckley,* 17 Fed. Rep., 584; *Holmes v. Boydston,* 1 Neb., 357; *French v. Ramge,* 2 Id., 254; *Reed v. Beardsley,* 6 Id., 498; *Mapstrick v. Ramge,* 9 Id., 394; *Kelley v. Peterson,* Id., 81; *Sycamore Co. v. Sturm,* 13 Id., 215; *Wasson v. Palmer,* Id., 378; *Bridges v. Lanham,* 14 Id., 369; *Post v. Garrow,* 18 Id., 682; *Nindle v. Bank,* 13 Id., 246; *Goodrich v. McClary,* 3 Id., 123.

NORVAL, J.

This suit was brought by the plaintiff in error in the district court of Lancaster county to recover from the defendants $1,048.74 and interest, for coal sold and delivered. The plaintiff in his petition alleges:

" First—That the plaintiff at divers times, from the 12th day of December, 1887, to the 20th day of December, 1887, furnished coal at an agreed price to the said defend-

ants, at various points in the state of Nebraska, as directed by said defendants; that said coal was furnished at the defendants' special instance and request, and amounted in the aggregate to the sum of $1,048.74.

"Second—Plaintiff alleges that the said amount of $1,048.74 is long past due, that no part thereof has been paid, although defendants have been frequently requested to pay the same, and that there is now due and owing this plaintiff from the said defendants on said account the sum of $1,048.74, and interest thereon from the 18th day of December, 1887, at the rate of seven per cent per annum."

The defendants filed the following answer and cross-petition:

"Now come said defendants and for an answer to the petiton of plaintiff filed herein say, that they admit that the plaintiff is duly incorporated under the laws of the state of Colorado; admit that the said defendants are a co-partnership doing business under the style and firm name of Hutchins & Hyatt; admit that plaintiff, from the 12th day of December, 1887, to the 20th day of December, 1887, furnished coal for defendants at an agreed price, at various points in the state of Nebraska, as set out in plaintiff's petition.

"For a set-off and counter-claim against the said plaintiff, arising out of the transaction and matter set forth in plaintiff's petition, these defendants allege:

"First—That for a long time prior to November 26, 1887, and for many years before that time, said defendants were coal merchants and dealers in coal, selling the same at wholesale and retail in the city of Lincoln, Nebraska, and through the state, and doing a large business from year to year therein, amounting to a sale of several hundred car loads of bituminous coal each year, and this fact said plaintiff at said time well knew; that prior to said time said plaintiff had been selling what was known as the Colorado coal, a very superior article of bituminous coal

and in great demand in the state of Nebraska. These defendants prior to said time had built up a large and lucrative business in soft coal, selling the same in the towns, cities, and villages in the state of Nebraska outside of the city of Lincoln, and at retail within the city of Lincoln, where these defendants had built up a large retail trade in what is known as the Colorado coal, and at said time and for a long time prior thereto, had been securing their supply of coal, amounting to several hundred car loads annually, of the Colorado Fuel Co.; that at or about said last named date, to-wit, November 26, 1887, these defendants entered into a contract with said plaintiff, partly in writing and partly verbal, whereby said plaintiff, who was dealing largely in Colorado coal known as Franceville coal, was to supply said defendants for the remainder of that winter season, which extended up to April 1, 1888, with said coal to the amount of fully ten cars per day of the same, agreeing also at said time to send and furnish to defendants all the coal said company could, except a small amount to be furnished plaintiff's trade in the southwestern part of the state of Nebraska; and the defendants having the right under said agreement to sell the coal at all points in the east, northwest, southern, and central portions of the state of Nebraska; and at or about said time plaintiff also agreed, when certain improvements and additional facilities for getting out coal then about completed should be made by plaintiff, then plaintiff would endeavor to ship to defendants at the rate of fifteen car loads per day, and which amount of coal defendants then had ample trade to consume; that at said time it was too late in the season to make other and further arrangements for a supply of coal and fuel with other coal and fuel companies or persons except at a very much higher price per car; that at said time, and during the winter season immediately following, said defendants could have easily handled and sold at a great profit, fully 300 cars per month of said Colo-

rado coal, and that fact was well known to said plaintiff; and it was further agreed at said time that defendants should pay for said coal at the end of each week, and which part of said contract defendants fully carried out and performed; that on or about the 20th day of December, 1887, without any previous notice being given to these defendants and without any just cause on the part of these defendants, said plaintiff quit furnishing coal under and in pursuance of said contract, and refused thereafter to furnish any coal to these defendants; that at the time of entering into said contract with said plaintiff said defendants ceased purchasing coal of the Colorado Fuel Co., and the said defendants at said time and up to the 20th day of December, 1887, and during the remainder of the season thereafter, except as has been stated, were solely dependent upon plaintiff for their supply of Colorado coal; that at the time plaintiff quit supplying defendants with coal as aforesaid there were orders in for 134 car loads of said coal. These orders were turned over to the Colorado Fuel Co. by the said plaintiff to be filled, and said last named company, after many days' delay—which delay caused great injury and damage to the business of these defendants, filled forty-one cars of said order, leaving entirely unfilled ninety-three cars; that these defendants were damaged by the delay in filling said forty-one cars to the amount of fully $300.

"Second—That of the unfilled orders, amounting to ninety-three cars, after deducting said forty-one cars thus sent by defendants, there were twenty-nine cars that were ordered for the retail market of the city of Lincoln, on which there was a loss of $1 per ton or $16 per car, there being on an average sixteen tons to the car, making a total loss on the twenty-nine cars unfilled by plaintiff, $464.

"Third—On the remaining sixty-four cars unfilled on orders there was a loss of $4 per car, or 25 cents per ton, making a total loss upon said sixty-four cars of $256, sus-

tained by reason of the failure of said plaintiff to carry out and fully perform its contracts as aforesaid.

"Fourth—The loss sustained by these defendants after they could get no more orders filled by said plaintiff for the balance of the season, which extended in the coal trade up to April 1, for the use of such coal, being three months and ten days, amounted to fully 776 cars; that said coal so agreed to be furnished by said plaintiff was an unusually popular coal, and defendants could have sold much larger quantities than ten cars per day, at the price that the same was to be furnished by said plaintiff, and defendants were unable to obtain any other person or corporation that would fill orders for such an amount of coal for the remainder of the season at a price whereby these defendants could make any profit out of the same in handling such coal, and defendants were unable to get their customers to take any other coal in lieu of said Colorado coal; that of the 776 cars which should have been furnished by said plaintiff for the remainder of the season and which were not furnished for the balance of that season's trade, 187 cars could have been sold, and would have been sold, if furnished by said defendants, at retail in the city of Lincoln, Nebraska, and at a profit of $1 per ton, or $16 per car, or a total profit on 187 cars of $2,992, which would have been net profit to these defendants.

"Fifth—Of the remaining cars, after deducting the 187 cars above referred to, these 589 cars would have been used by consumers outside of the city of Lincoln, within the state of Nebraska, and on which these defendants would have made a profit of $4 per car, amounting in all on said 589 cars to a net profit of $2,356 to these defendants.

"That under and in pursuance of said agreement it was the duty of said railroad company, said plaintiff, to deliver said coal at the city of Lincoln, Nebraska, or at such points in the state of Nebraska as these defendants should order from time to time, said plaintiff having procured its own

37

rates from other railroad companies to haul the coal from Colorado into Nebraska.

"Wherefore these defendants were damaged in the sum of $6,268 by reason of the failure and negligence of said company, said plaintiff, in performing its contract aforesaid and by reason of the premises herein stated.

"Wherefore said plaintiff is indebted to these defendants in the sum of $6,268 with interest thereon from the 1st day of April, 1888, for which sum of $6,268 with interest from April 1, 1888, these defendants demand judgment, and costs of this action."

The plaintiff replied by a general denial of the allegations of the cross-petition.

The jury in their verdict found the amount due the plaintiff on its cause of action to be $1,138.92; found for the defendants on their counter-claim, assessing their damages at $4,138.92, and found that there was due the defendants from the plaintiff a balance amounting to $3,000, for which sum judgment was entered in favor of the defendants.

At the commencement of the trial the plaintiff objected to the introduction of any testimony under the answer and cross-petition, on the ground that it did not state facts sufficient to constitute a cause of action against the plaintiff, which objection was overruled. This ruling of the trial court is assigned for error.

The defendants in their cross-petition seek to recover from the plaintiff damages alleged to have been sustained by them on account of the failure and refusal of the plaintiff to deliver to them ten cars of Colorado coal per day, during the winter of 1887 and 1888, which it had sold to the defendants. In the second paragraph of the cross-petition the defendants claim that they have suffered a loss of $1 per ton on twenty-nine cars that were not delivered, which were ordered for the retail market of the city of Lincoln, and in the next succeeding paragraph they allege a

loss of twenty-five cents per ton on sixty-four cars, by rea-
son of the failure of the plaintiff to perform its contract.
The defendants in the fourth paragraph of their pleading
set up that 187 of the cars of coal which were not deliv-
ered could and would have been sold by the defendants
at retail in Lincoln, at a net profit to them of $2,992, and
in the fifth paragraph they allege that 589 cars of coal
would have been used by consumers outside of Lincoln, on
which the defendants would have made a profit of $4 per
car, or $2,356.

We are satisfied that the cross-petition fails to state a
cause of action against the plaintiff. It does not allege
facts sufficient to show that the defendants had been dam-
aged by the failure of the plaintiff to furnish the coal as
agreed. It is nowhere alleged in the pleading that the coal
was to be furnished by the plaintiff at an agreed or stipu-
lated price. Unless the price was agreed upon, it is clear
that the defendants were not damaged by the failure of the
plaintiff to keep the contract. There is likewise no allega-
tion as to the market value of the coal at the time and
place the same was to be delivered. As a general rule,
where the seller of personal property fails and refuses to
deliver the same to the buyer, the measure of damages for
a breach of the contract is the difference between the con-
tract price and the market value of the property at the time
and place where it should have been delivered under the
agreement. (*Goodrich v. McClary*, 3 Neb., 123; *Wasson
v. Palmer*, 13 Neb., 378; 17 Neb., 330; *Post v. Garrow*,
18 Neb., 682; *Sleuter v. Wallbaum*, 45 Ill., 43; *Metz v.
Albrecht*, 52 Ill., 491.) The defendants having failed to
allege a definite price they were to pay for the coal, and its
market value where it was to have been delivered, it does
not appear, from the pleading, that they have sustained
a loss by the failure of the plaintiff to deliver the coal.
It is not sufficient to aver that the defendants suffered
"a loss" of a specified sum per ton, or that they would

have made a profit of a definite amount had the coal been furnished.

The fact that the defendants admit in their pleading the allegations of the petition, that the plaintiff furnished the coal sued for at an agreed price, did not relieve them from averring and proving that the plaintiff promised to deliver other coal at a stipulated sum. The contract on which the defendants rely is entirely different from that pleaded by the plaintiff, and the sufficiency of the cross-petition must be determined as if it stood alone, and without reference to the averments contained in the petition of the plaintiff. When so construed, it fails to state a cause of action against the plaintiff.

Upon the trial in the court below the defendants proved the price per ton the coal could have been sold for by them at retail in the city of Lincoln. The loss of probable profits which the defendants might have realized from the disposition of the coal at retail is entirely too remote and uncertain to be recovered. This evidence was inadmissible, and prejudicial to the plaintiff. (*Holmes v. Boydston*, 1 Neb., 357; *French v. Ramge*, 2 Neb., 254; *Sycamore Co. v. Sturm*, 13 Neb., 215; *Bridges v. Lanham*, 14 Neb., 369.)

The correct rule as to the measure of damages was stated by the trial court in instruction No. 5, thus: "If you find in favor of the defendants upon their counter-claim, then you are instructed that the measure of defendants' damages would be as follows: you will find from the evidence the agreed or contract price of coal at the time and place of delivery; then you will find the market value of the coal at the time and place of delivery; the excess, if any, of the market value at the time and place of delivery over the contract price, would be the damages sustained by defendants."

According to the defendants' testimony the plaintiff agreed to deliver the coal in carload lots at Lincoln and other points in the state at a stipulated sum per ton. The

Gales v. Parrott.

testimony should have been confined to the market value of the same grade of coal per ton by the car load and not what it would have brought at retail.

The judgment of the court below is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.