EDWARD T. GRAHAM V. JAMES FRAZIER.

FILED SEPTEMBER 16, 1896. No. 6702.

1. **Conflicting Evidence:** REVIEW. A question of fact determined on conflicting evidence will not be reviewed.

2. **Instructions:** ASSIGNMENTS OF ERROR. Errors in instructions should be separately assigned in the motion for a new trial, as well as the petition in error.

3. **Rulings on Evidence:** ASSIGNMENTS OF ERROR. Alleged errors in the admission of evidence, to be available in this court, must be specifically assigned in the petition in error.

4. **Trial:** OBJECTIONS: REVIEW. An objection to the admissibility of testimony cannot be raised for the first time in the reviewing court.

5. ———: DOCUMENTS: BILL OF EXCEPTIONS. A ruling excluding a paper or document as evidence cannot be considered when such paper or document has not been embodied in the bill of exceptions.

6. ———: IMMATERIAL TESTIMONY: HARMLESS ERROR. The judgment will not be reversed for the admission of immaterial testimony, when the same could not have prejudiced the rights of the complaining party.

7. **Sales:** DELIVERY: BREACH OF CONTRACT: MEASURE OF DAMAGES. The measure of damages for a breach of a contract by the vendor of personal property failing to make delivery to the vendee, generally, is the difference between the contract price and the fair market value of the property at the time and place specified in the agreement for delivery.

8. ———: ———: ———: ———: EVIDENCE. *Held,* That the evidence introduced by a plaintiff did not trench upon the above rule.

9. **Tender: WAIVER.** A formal tender of money is never required where it is disclosed, if it had been made, it would have been fruitless.

10. **Trial: REMARKS OF JUDGE: REVIEW.** *Held,* That the remarks of the trial judge made in the presence of the jury, which are set out in the opinion, were not prejudicial.

ERROR from the district court of Douglas county. Tried below before BLAIR, J.

*Allen, Reppert, Reed & Ellis, Ricketts & Wilson,* and *Frank T. Ransom,* for plaintiff in error.

*Charles Offutt, contra.*

NORVAL, J.

James Frazier brought this suit in the district court of Douglas county against Edward P. Graham, alleging in his petition that plaintiff, on or about June 30, 1892, purchased of the defendant 220 head of fat cattle at the agreed price of four cents per pound, said cattle to be delivered by the defendant at any time at plaintiff's election, on or before July 8, 1892; that plaintiff paid to defendant $600 as part of the purchase price, and the latter has since retained the same; that on July 4 and 6, 1892, the remainder of the consideration was offered and tendered to the defendant, which he refused to accept, and declined to deliver the cattle, or any part thereof, and that thereby plaintiff has sustained damages in the sum of $5,000, for which sum judgment was prayed. The defendant answered by a general denial, and pleaded an oral contract differing from the one set up in the petition, as to the number of cattle bought, and the date agreed upon for performance, and averred that plaintiff failed to appear and accept the cattle at the time and place for delivery, although time was made the essence of the contract; wherefore defendant claims to be relieved from the terms of said contract. He also pleaded the statute of frauds, and in his answer tendered to the

plaintiff the sum of $600, the same being the money re-
ferred to in the petition as having been paid on the con-
tract. Plaintiff replied by a general denial of the allega-
tions of the answer, and pleaded a part performance of
the contract by the payment to, and retention by, defend-
ant of $600 as part of the purchase price of the cattle
when the contract was made. There was a jury trial,
with a verdict and judgment against defendant in the
sum of $2,692.48.

The plaintiff, James Frazier, is a stock buyer residing
at Columbus, Platte county. On the 30th day of June,
1892, he went to the farm of Edward Graham, the
defendant, about one mile from Creston, in the same
county, and while there he entered into an oral contract
with Graham for the purchase of the latter's cattle, con-
sisting of something over 200 head, at the agreed price of
four cents per pound, payment of consideration, or all
but $600 thereof, to be made at time of delivery of the
cattle by the defendant at Creston on a future date.
There is a conflict in the testimony as to the exact time
fixed by the parties for the delivery. That introduced
by the plaintiff tends to show the agreement was that
he was to accept the cattle at his option on a day not later
than July 8, while the testimony on behalf of the defend-
ant is to the effect that the limit for delivery was July 5.
It is undisputed that plaintiff did not call to receive the
cattle, nor did he pay, or offer to do so, the residue of the
purchase price until in the afternoon of July 6, at which
time he demanded the cattle, and the defendant refused
to deliver them under the contract. The demand was
renewed the next day. The verdict being in favor of
plaintiff, on or prior to July 8 must be accepted by us as
the period fixed by the parties for delivery, and hence
the demand for the cattle was seasonably made.

Another controverted issue in the case is whether any
part of the consideration was paid down. It appears that
on the date of the purchase plaintiff and defendant went
together to the Bank of Creston and while there plaintiff

drew a sight draft for $650 on Gassman & Dudley, of South Omaha, in favor of defendant; that the bank took the draft and paid Frazier $50 of the amount; and $600 plaintiff claims was thereupon credited by the bank to Graham's account. The latter insisted upon the trial that the draft was not accepted by him as absolute payment, but conditional that if it was paid the $600 would be credited on the purchase price. There was testimony to support the respective contentions, but the jury decided this disputed question of fact against the defendant by the following special finding:

"Did the defendant Graham on the 30th day of June, 1892, accept a credit in the Bank of Creston as a part payment of $600 at the time, upon the contract between him and the plaintiff for the sale and purchase of the cattle? Answer yes or no.

"The answer of the jury is 'Yes.'     W. M. DODGE,
                                    *"Foreman."*

This finding being abundantly supported by the proofs, disposes of the contention of the defendant that there was no part payment of the purchase price at the time the contract was entered into. It should be stated that this draft in the ordinary course of business was paid, and the proceeds have been retained by the defendant. In his answer filed in this case he for the first time offered to refund the $600 to the plaintiff.

There is a conflict in the testimony as to what transpired on July 6 and 7 when Frazier demanded the cattle. He strenuously insists the refusal of Graham to permit him to take the cattle on either day was put upon the sole ground that the delivery according to the agreement was to be made and the purchase money paid not later than July 5, and as the plaintiff had failed to comply with the contract on his part to be performed, defendant was relieved from all obligations to deliver the cattle. On the other hand, the contention of the defendant is that he gave an additional reason for his refusal, namely,

that plaintiff did not tender payment for the cattle in cash, but in drafts, which Graham insists that he declined to accept, and so advised Frazier. That tender was not made in actual money at the time produced is clear, but there is a dispute in the testimony as to whether the refusal to deliver the cattle was unqualified and absolute alone, or whether it was coupled with the objection that drafts were offered in payment instead of cash. There is no lack of testimony to sustain either view. It was for the jurors, and not us, to weigh the conflicting testimony and pass upon the credibility of the witnesses. This they have done, and their decision is final. If plaintiff offered to procure the money with which to pay the remainder of the purchase price, and defendant absolutely refused to deliver the cattle on the ground that the contract was at an end, then the failure to prove a tender would not prevent a recovery. (*Post v. Garrow*, 18 Neb., 682.) There being an abundance of evidence to establish the contract and breach thereof as alleged by plaintiff, the judgment, if it is to be reversed, must be reversed for some ground or cause other than that the verdict is without proofs to support it.

Criticisms are made in the brief of counsel upon the fourth paragraph of the charge and plaintiff's fourth instruction, and to the action of the court in refusing defendant's fourth request, but they cannot be considered because of the insufficiency of the assignments relating to instructions in the motion for a new trial. The assignments are to the instructions *en masse,*—those given as well as those refused. It is the settled rule that an allegation of error to the giving or refusing of a group of instructions is bad unless well taken as to all included in such group. (*Dempster Mill Mfg. Co. v. First Nat. Bank of Holdrege*, 49 Neb., 321, and cases there cited.) The court's charge consisted of nine consecutively numbered paragraphs. More than one of the instructions given by the court on its own motion were clearly proper. Especially is this true of the first three, which stated the

issues tendered by the pleadings, the seventh paragraph which stated that the burden of proof was upon the plaintiff to establish by a preponderance of the evidence each material averment in his petition, and also of the tenth instruction which told the jury that the credibility of the witnesses and the weight to be given the testimony were questions exclusively for the jury; yet these instructions were grouped with the other paragraphs of the charge in a single assignment in the motion for a new trial. The assignment not being good as to those, it must be overruled as to the others included therein. At least one of the four instructions given at the request of the plaintiff is above criticism, and one, if not more, of defendant's requests to charge was properly denied. The others will not be considered.

Error is assigned in the court's permitting plaintiff to testify to a conversation had with the defendant a few days prior to June 30, the date of the sale, when he made an unsuccessful attempt to purchase the cattle. The substance of this conversation as detailed by plaintiff was that he inquired of the defendant what was the lowest price he would take for the cattle, and received a reply: "I put them up until I can get four cents, and when you can give four cents you can buy the cattle; that is the least that will buy them." Frazier declined to pay the sum asked, but subsequently, on June 30, agreed to do so. This testimony was entirely harmless. It related to negotiations which finally resulted in the contract of purchase, and that, too, at the price first asked by Graham,—four cents per pound.

Criticism is made upon the admission of testimony of plaintiff as to the market value of these cattle in South Omaha on the 6th and 7th days of July, 1892, the contention being that evidence of the value at Creston, Nebraska, the place where the contract called for the delivery, alone was admissible for the purpose of fixing the amount of recovery. Unquestionably as a general rule the measure of damages for a breach of a contract by the

seller of personal property failing to make delivery to the purchaser is the difference between the contract price and the fair market value of the property at the time and place specified in the agreement for delivery. (*Goodrich v. McClary*, 3 Neb., 123; *Post v. Garrow*, 18 Neb., 682; *Denver, T. & G. R. Co. v. Hutchins*, 31 Neb., 572.) The testimony referred to, when considered in connection with the other evidence introduced, in nowise trenched upon the rule of damages above stated and which was given to the jury for their guidance. It was shown that the prices of cattle in the state were ruled largely by the South Omaha market, the only difference between the prices at that point and those at the interior towns being the cost of shipment, shrinkage, commissions, etc., and further, that twenty-five cents per one hundred pounds would cover the freight from Creston to South Omaha, feed, commissions, yardage, and other charges. With this evidence before the jury, together with the market price of cattle in South Omaha, on July 6, 7, and 8, there was no difficulty in ascertaining the value of these cattle at Creston on the same dates. The testimony was not misleading, but was proper and pertinent, and showed an advance in the market value of the cattle over the contract price of more than one dollar per one hundred pounds.

Error is assigned in excluding Exhibit 8 from the jury. We are unable to determine whether this ruling is prejudicial or not, since the exhibit referred to is not preserved in the bill of exceptions. (*Keens v. Robertson*, 46 Neb., 837; *Fremont Butter & Egg Co. v. Peters*, 45 Neb., 356; *Barr v. State*, 45 Neb., 458.)

Complaint is made of the ruling of the court in admitting over the objection of the defendant the following telegram from the cashier of the South Omaha National Bank to the Bank of Creston:

"JULY 7th.

"*Bank of Creston, Neb.:* Gassman & Dudley will pay draft on them by James Frazier for purchase money for

220 cattle at four cents, purchased from Ed. Graham. Cattle to be consigned to firm. You tender payment to Graham for Frazier. H. C. BOSTRICK,
*"Cashier.*

"Charge Gassman & Dudley."

Evidence was introduced to the effect that when plaintiff demanded the cattle, he and his attorney, Mr. Reeder, informed the defendant—which was true—that arrangements had been made with the Bank of Creston for the payment of the balance of the purchase price, at least one-half thereof to be paid in actual cash and the remainder in either Chicago or New York exchange; that if the defendant desired the currency for the entire amount instead of the drafts for a portion, plaintiff proffered to procure the same from a certain bank in Columbus, and that Graham thereupon stated he would as soon accept the drafts as money, if he were to let the cattle go; yet he absolutely and unconditionally refused to deliver the cattle, not because the currency was not at the time produced, but on the ground that the plaintiff had not called for the stock within the time fixed by the agreement. It is undisputed that plaintiff at neither time when demand was made had the money with him, but he was ready and willing to obtain the same, and would have done so if the defendant had desired it. The precise relevancy of the telegram copied above to the issues in the case we fail to discover. It is certain, however, in view of the foregoing facts, and that the case was not tried upon the theory that the money was actually produced by plaintiff, but that the production thereof was waived by the defendant by his absolute and unqualified refusal to deliver the cattle, that the admission of the telegram could not have prejudiced the rights of the defendant. The jury could not, under the instructions, have failed to understand that unless they found such waiver the plaintiff was not entitled to damages. If the delivery of the cattle was refused upon the express ground that they were called for at too late a date,

plaintiff was under no obligation to formally tender the
remainder of the purchase money in order to enforce his
rights under the contract, since a tender is never required
where it appears, if it had been made, it would have been
fruitless.

There was no reversible error in the trial court making
the following statements in the presence of the jury dur-
ing the cross-examination of defendant's witness, Flem-
ing: "The court states in the presence of the jury that
this line of examination has developed the theory of the
plaintiff." The judge did not say what he regarded to be
the theory of the plaintiff, nor did he use language from
which the views of the judge could be inferred, much less
that the plaintiff's theory of the case was the proper or
legitimate one. The remark did not in the least discredit
the witness before the jury, as counsel for defendant be-
low contend. To us the sentence conveys no intelligible
meaning, and manifestly no possible harm resulted from
its utterance.

The record shows that plaintiff brought suit for the
breach of this contract in Platte county on the evening of
July 6, 1892, and summons was served on the defendant
the next day. Subsequently, this action was instituted,
and the former one was dismissed by the plaintiff. It
is argued that the rights of the parties under the con-
tract were fixed on the commencement of the first action,
and that plaintiff could not thereafter affect a further
breach of the contract by renewing the demand for a
delivery of the cattle, and therefore it was error for the
court to admit in evidence the conversations between
plaintiff and defendant or plaintiff's counsel had on
July 7, or to instruct the jury that they might base
their verdict upon facts tending to show a breach of
the contract occurring after July 6. We have already
determined that alleged errors in the instructions can-
not be considered by reason of the insufficiency of
the assignment in the motion for a new trial. A suf-
ficient answer to the objection made to the testimony

relating to what transpired between the parties on July 7 is that the point is not raised by any assignment in the petition in error. (*Smith v. Mason*, 44 Neb., 610.) Moreover, the testimony alluded to was admitted without objection, so that the error, if any, in its admission is not a subject for consideration at this time. (*Western Union Telegraph Co. v. Lowrey*, 32 Neb., 732.) The verdict being supported by the evidence, and no reversible error appearing in the record, the judgment is

AFFIRMED.

POST, C. J., not sitting.