ELMER C. LOY, APPELLEE, V. STORZ ELECTRIC REFRIGERATION COMPANY, APPELLANT.

FILED JANUARY 28, 1932. No. 28065.

*Howell, Tunison & Joyner,* for appellant.

*Lawrence I. Shaw,* contra.

Heard before ROSE, GOOD and DAY, JJ., and FROST and MESSMORE, District Judges.

MESSMORE, District Judge.

This is an action wherein appellee, plaintiff below, sued appellant, defendant below, upon five causes of action growing out of appellee's employment by appellant as a salesman in Omaha.

The third and fourth causes of action set out in appellee's petition were abandoned by him in this court. The petition further alleges that on May 1, 1929, appellant, hereinafter called the company, employed appellee as a salesman and orally agreed to pay him a salary of $100 a month, plus 5 per cent. commission on his sales; that appellee worked under said contract until July 1, 1930, but was not paid his salary for the last half of June of that year, and praying for damages in the sum of $50 on his first cause of action.

His second cause of action is to the effect that about July 1, 1930, said oral contract of employment was canceled by mutual agreement of the parties, and appellee agreed, beginning July 1, 1930, to work on a strictly commission basis; that during July, 1930, he earned in commissions $183.40, but was paid only $100 thereof, and asks for damages in the sum of $83.40.

The fifth cause of action alleges that the company agreed to sell appellee, at wholesale price, a model G-100 electric refrigerator for $286; that appellee paid $275 of said price and was to pay the balance of $11 on delivery of said refrigerator to him; that the company has refused to deliver said refrigerator; that the retail value of the same is $475 and asks damages for said amount, less $11, leaving a balance due appellee on said cause of action of $464.

The company answered by denying all the allegations of the second amended petition, except such as were admitted; further, that it employed appellee as a salesman on a strictly commission basis of 12 per cent. on f. o. b. factory prices; agreed, as long as it was willing, to furnish appellee $100 a month, to be charged against his earn-

ings and to be repaid if the same exceeded his earnings; that it advanced appellee $2,096.40, and that his earned commissions were $1,568.20, leaving a balance due the company of $528.20; that appellee bought certain merchandise of the company, sold the same on his own account and turned part of the proceeds over to the company, for which he was credited with the sum of $320.19, leaving a net balance due the company of $208.01; that the company furnished appellee a true and correct statement of said account, that he accepted the same and agreed to pay it; that said account constituted an account stated; and the company prayed judgment against appellee for the sum of $208.01. On the trial, however, the company withdrew its request for judgment on its counterclaim in excess of the amount required to defeat appellee's causes of action and prayed for judgment for costs only.

Trial was had to a jury, which found for appellee, as prayed, on each of his five causes of action. Judgment was entered thereon. A motion for a new trial was filed and overruled on condition that appellee file a remittitur of all sums in excess of $464, the same being the amount claimed under his fifth cause of action, which remittitur was duly filed.

On appeal to this court we have for consideration appellee's recovery on his fifth cause of action, above set out, and appellee asks further, having abandoned his third and fourth causes of action in this court, that his recovery on the first and second causes of action be allowed and the remittitur of said causes of action filed in the lower court be held for naught.

The record discloses the identity of appellant company and the employment of appellee by the company; also his statement of the agreement that he was to receive $100 a month and 5 per cent. commissions on all sales as a salary, and any balance up to and including 12 per cent. of his commissions was to be paid to him as a bonus; that he was not paid for the last half of June, 1930, which left a balance of $50 due him. He was corroborated in this

testimony by the witness Davies, retail sales manager of the company; that said witness and one Nellor, vice-president and general manager of the company, had worked out a basis for the retail department whereby $75 or $100, whatever it might be, plus 5 per cent. was computed against 12 per cent., and if a man's total sales on a commission of 12 per cent. exceeded the amount he actually drew he was to receive the balance in cash as a bonus.

Appellee's exhibit 1, claimed to be an account of salary drawn in December, 1929, and received in evidence as an ultimate fact as to whether or not it was salary or something else, was testified to by one Freda Lohrberg, private secretary of Mr. A. C. Storz, president of the company.

Appellee's evidence disclosed further that he went on a strictly commission basis in July, 1930, and terminated his employment with the company in the latter part of said month. It was stipulated that his commissions from the sale of refrigeration machines during that month would entitle him to the sum of $183.40, $100 of said amount being paid appellee.

In reference to the purchase of the G-100 machine from the company, appellee testified that he agreed to purchase it from the company at a price of $286; that he sold his old machine, taking in payment therefor a contract for $250, which he turned over to the company, also receiving in payment of said machine a check for $25, which he indorsed over to the company; that he still owed the company $11 on the purchase price of the new machine; that said machine was not delivered to him by the company.

Contra to this testimony the company offered the testimony of Mr. Nellor, who, at the time of employment of appellee by the company, was its vice-president and general manager, to the effect that appellee was employed on a straight 12 per cent. commission basis and that $100 was paid him monthly as a drawing account; that said $100 was to be charged against his commissions for such period as the company was willing to do so. The company also introduced documentary evidence to show that appellee

was employed as a permanent salesman on a commission basis.

Several officers of the company testified to the account the company had with appellee in the course of its employment of him and the correctness of the account, which was substantially as stated in the counterclaim and set-off filed by the company. This account was denied by appellee. The company sought by evidence to show that there was no denial of the account on the part of appellee and that he accepted the same as true.

Appellant relies upon an account stated to defeat the claims of appellee and cites the cases of *Brewer v. Wright,* 25 Neb. 305, and *Jorgensen v. Kingsley,* 60 Neb. 44. In the latter case it was held that an account stated is merely an agreement between persons who have had previous transactions, fixing the amount due as the result of an accounting.

The general rule is that when parties have accounts against each other, and a statement of the account is made out by one party and presented to the other, and the latter expressly assents to its correctness, the law will regard it as a stated or settled account, and it will be binding on both parties. This rule was set out in an instruction of the trial court in the case of *Brewer v. Wright, supra,* which instruction was criticized by this court, but only to the extent that it might not apply to the case in which it was given; however, the instruction stated the general rule of an account stated in Nebraska.

In the instant case, while witnesses for the company stated that appellee agreed and assented to the account as stated by the company, there is a denial in the evidence of appellee on this point which takes this case out of the category of cases of an account stated; in other words, a dispute arises as to the correctness of this account.

In an account stated the person seeking to establish such an account may recover only by showing both the account and the unqualified assent of the other party thereto. *Sterling Lumber Co. v. Stinson,* 41 Neb. 368; *Cahill, Swift*

*Mfg. Co. v. Morrissey Plumbing Co.,* 3 Neb. (Unof.) 865.

In the case of *Haish v. Dillon,* 71 Neb. 290, it was held that in stating an account, as in making any other agreement, the minds of the parties must meet, and the transaction must be understood by the parties as a final adjustment of the respective accounts between them and the amount due. In the instant case the minds of the parties did not meet on the alleged account and the transaction was denied, so then it was not understood. Every element of the account was presented to the jury in the counterclaim of the company, with the exception that $208.01, the sum formerly·claimed due it from appellee in said counterclaim, was withdrawn from their consideration, and the counterclaim was left in the case in an amount required to defeat appellee's cause of action. The jury had the benefit of the claim made by the company and determined against it.

The company, for one of its assignments of error, complained of the misconduct of appellee's attorney in his argument to the jury. An examination of the record shows that the court informed the jury that they were not interested in the remarks of counsel, and under the admonition of the court we believe there is no prejudicial error in this respect.

The lower court, in ruling on the motion for a new trial, required appellee to file a remittitur of the amounts awarded him by the jury on his first four causes of action, which he did. Appellee abandoned his third and fourth causes of action in this court, which·leaves the first and second causes of action upon which the remittitur is operative. Section 20-1929, Comp. St. 1929, provides: "That whenever the court shall direct a remittitur in any action, and the same is made, and the party for whose benefit it is made shall appeal said action, then the party remitting shall not be barred from maintaining that said remittitur should not have been required either in whole or in part." We are inclined to believe that the lower court erred in requiring appellee to file a remittitur of these causes of

action. There was sufficient evidence offered to sustain the findings of the jury on both the first and second causes of action, which were properly submitted to the jury.

The company cites as error the giving of· instructions No. 6 and No. 8 which relate to the measure of damages for failure to deliver the G-100 electric refrigerator to appellee, and calls the court's attention to the fact that the wholesale price of the machine was $286 and that appellee was dealing with a wholesaler when he was dealing with the company.

It is held in almost every court of last resort in the Union that, where a breach of a contract consists of the failure of the seller to deliver goods, the measure of damages is ordinarily the difference between the contract price and the market price. The contract price in the instant case was $286 and the jury found the market price of the machine to be $475 on the day appointed for its delivery. Appellee was entitled to have the machine in question delivered to him. He had severed his connection with the company. It retained the machine. If he made a bargain, he was entitled to the fruits of his bargain.

In *Denver, T. & G. R. Co. v. Hutchins,* 31 Neb. 572, it was held that, where the seller of personal property fails and refuses to deliver the same to the buyer, the measure of damages for a breach of contract is the difference between the contract price and the market value of the property at the time and place where it should have been delivered.

Under the Uniform Sales Act, section 69-467, Comp. St. 1929, it is stated, in subdivision 3 of said section, in an action for failure to deliver goods: "Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of refusal to deliver."

From the foregoing we believe that the measure of damages in the instant case was correctly stated by the trial court and that the jury's verdict in that respect should not be disturbed.

Remanded, with instructions to enter judgment in favor of appellee on his first and second causes of action, the remittitur to stand as to his third and fourth causes of action, and affirmed as to the fifth cause of action.

AFFIRMED IN PART, AND REVERSED IN PART,
AND REMANDED, WITH DIRECTIONS.