# Western Union Telegraph Company, Plff. in Err., v. Jacob B. Landis et al.

When a telegraph operator, at the request of the receiver of a telegram, wires back to inquire if the message has been correctly transmitted, the telegraph company is liable for errors in the telegram received, as for a repeated message.

The fact that the receiver of the telegram paid nothing for the repetition of the message is immaterial, in a case where there was no demand and refusal to pay, and the receiver of the telegram had a current account with the telegraph company, and paid on bills rendered on stated occasions.

A telegram was sent from the stock yards at Pittsburgh, Pennsylvania, to the stock yards at Philadelphia, Pennsylvania, as follows: "One cost six half two wooled texas five sixty take all off evening." *Held*, under the circumstances of this case there was enough upon the face of the telegram to indicate to the receiving operator that it referred to sheep to be shipped to Philadelphia, and their price.

The above telegram when received read, "One cost six half two wooled texas fixe six take all off evening." The message as sent meant, *inter alia*, that the sender had shipped two carloads of wooled Texas sheep at a cost of $5.60 per hundred weight. As delivered the price was stated to be $5.06 per hundred weight. The message was repeated, as stated above. *Held*, that the telegraph company was liable for any loss occasioned by the erroneous transmission of the telegrams.

The receiver of the above telegram having sold the Texas sheep before their arrival, at $6 per hundred weight, was allowed to prove, in an action against the telegraph company, the actual value of the sheep and also the price for which they had been sold, and to recover from the telegraph company the difference between these two sums.

The right to recover damages in this case was not affected by the fact that the sheep had sold for more than their actual cost.

In an action against a telegraph company to recover for damages occasioned by the erroneous transmission of a telegram alleged to have been repeated, it is not competent to prove the practice or method pursued

Cited in Fergusson v. Anglo-American Teleg. Co. 178 Pa. 377, 382, 35 L. R. A. 554, 56 Am. St. Rep. 770, 35 Atl. 979.

by the company in regard to repeated messages; but it is competent to prove what either party did or omitted to do upon that particular occasion.

(Argued January 11, 1888.  Decided February 6, 1888.)

July Term, 1887, No. 49, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.  Error to the Common Pleas No. 1 of Philadelphia County to review a judgment on a verdict for the plaintiffs in an action on the case.  Affirmed.

This was an action brought by Jacob B. Landis and Metz J. Erisman, trading as Landis & Erisman, against the Western Union Telegraph Company, for losses occasioned by an error in the transmission of a telegram.

The facts of the case were as follows:

The plaintiffs below, Landis & Erisman, were stock dealers in 1882, and carried on business at the stock yards in West Philadelphia.  They had an agent at the stock yards at East Liberty, near Pittsburgh, for the purpose of buying stock.  In April, 1882, he bought a lot of sheep for his principals, and on April 27, 1882, he deposited the following message at the office of the Western Union Telegraph for transmission to his principals:

To J. B. Landis, Abattoir, W. Phila.,

One cost six half two wooled texas five sixty take all off evening.                                                     H. Erisman.

This message was transmitted by the defendant below, first to its office in Pittsburgh, thence to its central office in Philadelphia, at Tenth and Chestnut streets, and thence to the abattoir in West Philadelphia, where it was received by the operator, written on one of the blanks in use by the defendant for the delivery of messages, sent by a messenger boy to Mr. Landis, and delivered to him about half a square away.

In the course of the transmission, however, the word "sixty" in the original had been changed into six, and the message as delivered was, "One cost six half two wooled texas five six take all off evening."  When Mr. Landis read the message he suspected that an error had been committed, and went to the telegraph office

and asked the operator whether it meant "five six" or "five sixty," and requested him, as Landis testified, to ask the sender which it was, and the operator said: "I have asked him; it is 'five six.' I asked because I thought it was funny it was five six."

The operator testified that Mr. Erisman requested him to ask whether the message as received was correct, and that he went to his key and asked the operator at Tenth and Chestnut streets if the word was six, and received reply that it was; that he then told Mr. Erisman this, and he went away.

Nothing extra was paid for this service at the time it was rendered, nor was a charge included for it in the account subsequently rendered to the plaintiffs, who settled with the company only on stated occasions. It appeared at the trial that the meaning of the message was that H. Erisman, the agent, had bought one car load of sheep at $6.50 per hundredweight and two car loads of wooled Texas sheep at $5.60 per hundred; that these sheep were then known, according to the course of business between plaintiffs and their agent, to be on the way to Philadelphia, and that the agent advised that they be all unloaded from the cars on the evening of their arrival.

After leaving the telegraph office the plaintiff sold the two car loads of wooled Texas sheep to a butcher at $6 per hundred, to be delivered on their arrival. The plaintiffs claimed that the sheep were worth $6.50 per hundred, and that they would have sold them at that price had the message been correctly received. The message delivered contained the usual printed conditions that "the company will not hold itself liable for errors or delays in transmission or delivery of unrepeated messages beyond the amount of tolls paid thereon."

Verdict and judgment were for the plaintiffs for $258.44; the damages having been assessed at fifty cents a hundred, with interest.

The assignments of error specified:

1. The plaintiffs having proved that their agent had delivered to the defendant for transmission to the plaintiffs, a message in the words: "One cost six half two wooled texas five sixty take all off evening," and that the said message related to car loads of sheep, and that in the course of transmission the word "six" had been substituted for "sixty," and that he had of-

fered them to a butcher at six cents per pound; the court erred in permitting the plaintiffs' counsel to ask the witness Landis the question, Did you sell the sheep at that price?

2. The plaintiffs having proved that the message was delivered to the plaintiffs by a messenger boy at a distance from the defendant's office, and that he went to the operator with the message and asked him if that meant "five six," or "five sixty," the court erred in permitting the plaintiffs' counsel to ask the question, What did he say?

3. The court erred (William D. Shuster, a witness for defendant, being on the stand) in refusing to allow defendant to prove by the witness what the method is that is pursued by the company where messages are ordered to be repeated under the terms of the message blank, and to show that this method was not pursued on this occasion.

4. The court erred in charging the jury as follows:

The operator admits that they asked him to inquire back, and he told them he had asked back. What more one who wants a message repeated can do is hard to understand. All you can ask is to have it repeated. A citizen cannot know by what route his message was sent. The sender has no mode of compelling a repetition to originating office. If the receiver of the message asks to have it repeated, he is not bound to know how it is done. If he asked to have it repeated, that was all he is bound to do. The liability of defendant is complete. It is beyond dispute that plaintiffs did ask to have the message repeated.

5. The court erred in refusing to affirm the following point submitted by defendant:

If the jury find that at the request of one of the plaintiffs the receiving operator asked back as to the correctness of the message, and asked only to the office from which he had received the message, and was assured that the word in the copy of the message before the sending operator was "six," and that the operator so informed the plaintiff, and that the plaintiff paid nothing for this service; these facts do not amount to a repetition of the message provided for in the contract between the parties and the plaintiff.

6. The court erred in refusing to charge the jury as requested in the following point:

The plaintiffs, having sold sheep at a price above what was

paid for them have suffered no loss, and can recover nothing from the defendant.

*Rudolph M. Schick* and *Benjamin Harris Brewster,* for plaintiff in error.—The true rule applicable to all cases of contract and tort, except where malice is shown, is such damages "as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable results of the breach of it." Hadley v. Baxendale, 26 Eng. L. & Eq. Rep. 398. See also Fleming v. Beck, 48 Pa. 312; Pittsburg Coal Co. v. Foster, 59 Pa. 365, 369; Hoag v. Lake Shore & M. S. R. Co. 85 Pa. 293, 298, 27 Am. Rep. 653; Pittsburgh Southern R. Co. v. Taylor, 15 W. N. C. 37, 42.

The same principle governs the measure of damages in telegraph cases everywhere; and its application to such cases is recognized in United States Teleg. Co. v. Wenger, 55 Pa. 262, 93 Am. Dec. 751.

The message in this case is unintelligible. It is not apparent to what subject-matter it relates, nor does it intelligibly disclose what is affirmed concerning that subject-matter.

The damages recoverable from the telegraph company for failure of its contract for the delivery of such a message are simply nominal. Gray, Communication by Telegraph, p. 161; Candee v. Western U. Teleg. Co. 34 Wis. 471, 17 Am. Rep. 452; Mackay v. Western U. Teleg. Co. 16 Nev. 222; Dorgan v. Telegraph Co. 1 Am. L. T. N. S. 406, Fed. Cas. No. 4,004; Daniel v. Western U. Teleg. Co. 61 Tex. 452, 48 Am. Rep. 305.

Another line of cases in which the telegraph company is held liable for nominal damages only belongs to this same class, although they do have a meaning on their face. They are thus classified because they do not disclose to the company any factor for ascertaining the extent of damage in case of default or negligence. Baldwin v. United States Teleg. Co. 45 N. Y. 744, 6 Am. Rep. 165; Behm v. Western U. Teleg. Co. 8 Biss. 131, Fed. Cas. No. 1,234; First Nat. Bank v. Western U. Teleg. Co. 30 Ohio St. 555, 27 Am. Rep. 485; Landsberger v. Magnetic Teleg. Co. 32 Barb. 530.

Substantial damages are allowed against a telegraph company

for default or negligence in transmitting a message, only where it is a direction to buy or sell some commodity or the message contained an order for goods. These cases are of two kinds:

First, when the message contains the name and quantity of the subject-matter had in contemplation. In these cases substantial damages have been allowed. New York & W. Printing Teleg. Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338; United States Teleg. Co. v. Wenger, 55 Pa. 262, 93 Am. Dec. 751; Harris v. Western U. Teleg. Co. 9 Phila. 88.

Second, when the message contains either the name of the subject-matter or the quantity had in contemplation. In such cases substantial damages have been allowed in True v. International Teleg. Co. 60 Me. 9, 11 Am. Rep. 156; Seiler v. Western U. Teleg. Co. Allen Teleg. Cas. 687; Squire v. Western U. Teleg. Co. 98 Mass. 232, 93 Am. Dec. 157.

But in the following cases only nominal damages were allowed: Stevenson v. Montreal Teleg. Co. 16 U. C. Q. B. 530; McColl v. Western U. Teleg. Co. 7 Abb. N. C. 151; Beaupre v. Pacific & Atlantic Teleg. Co. 21 Minn. 155; Shields v. Washington Teleg. Co. Allen Teleg. Cas. 5, and Kinghorne v. Montreal Teleg. Co. Allen Teleg. Cas. 98; United States Teleg. Co. v. Gildersleve, 29 Md. 232, 96 Am. Rep. 519; Hord v. Western U. Teleg. Co. 3 Ohio Dec. Reprint, 555; Gray, Communication by Telegraph, p. 157.

In the present case neither the subject-matter nor the quantity is named. The message does nothing but affirm a fact. No loss could have arisen, if the plaintiffs had pursued the usual course. On the arrival of the sheep they would have discovered the error in the message. The sale before the arrival was not contemplated in the message, or indeed by the parties. On arrival of the sheep the plaintiffs should have broken their contract of sale. The facts of this case do not amount to a repeated message. The entire duty of the operator was performed when he delivered the message. His subsequent acts could not bind the company. United States Teleg. Co. v. Gildersleve, 29 Md. 232, 96 Am. Dec. 519.

The damages sued for are prospective profits merely, which cannot be recovered.

*J. R. Adams* and *Samuel B. Huey,* for defendants in error.— The message in this case was in fact repeated. The company

could have charged for it in its account with the defendants in error. It cannot take advantage of its failure to do so.

The damages were properly estimated.

OPINION BY MR. JUSTICE PAXSON:

We see no error in permitting the witness Landis to answer the question, "Did you sell the sheep at that price?" The sheep had been sold to arrive at $6 per hundred. The allegation of the plaintiffs was that they had been sold for less than their value by reason of the error in the telegram, and he claimed to recover the difference as the measure of damages. The defendant company could not have been injured by the reply of the witness.

The second assignment does not appear to be sustained by an exception and is moreover without merit. Nor do we think it was error to refuse to permit the defendant to prove by the witness, Shuster, the practice or method pursued by the company in regard to repeated messages. What either party did or omitted to do upon this particular occasion was competent.

The fourth assignment alleges error in the charge of the court. A careful examination of the evidence leads us to a different conclusion. The message came from the stock yards near Pittsburgh, to Philadelphia. When delivered at that place to the plaintiffs they feared there was a mistake and went at once to the office of the company and asked the operator to wire back for information. The witness said: "I think I went right away to the operator and asked him to ask Erisman whether it was 'five six,' or 'five sixty,' and he said: 'I have asked him.' The reason he had asked was 'he thought it was funny it was five six.'" This was substantially "uncontradicted." The plaintiffs could only understand from it that the operator had wired back to inquire if the message had been transmitted correctly. The fact that nothing was paid for this service is not important. Had there been a demand and a refusal to pay, there would have been more force in the point. Aside from this the plaintiffs had a current account with the company, and paid on bills rendered on stated occasions.

The fifth and last assignment relates to the measure of damages. The court was asked to say to the jury that as the plaintiffs had sold the sheep at more than cost, they sustained no damage. This the court declined to do, and in this we see no

error. The plaintiffs were entitled to recover their actual loss. This is the rule recognized in our own case of United States Teleg. Co. v. Wenger, 55 Pa. 262, 93 Am. Dec. 751.

In that case an order to purchase stocks was sent to a broker in New York. The message was never delivered, causing a delay in the purchase of the stock which in the meantime had advanced in price. The plaintiff was allowed to recover the difference.

It was urged by the plaintiff in error that the telegram did not disclose its meaning so as to enable the operator to understand the importance of its correct transmission, and that the company could not have been aware of the extent of its responsibility for an error. United States Teleg. Co. v. Wenger was cited to sustain this view.

That, however, was a case where the negligence was a failure to deliver the telegram. Some of the other cases cited were also for delay in delivery. It seems reasonable that where damages are claimed for mere delay in delivery, the face of the telegram ought to contain something to put the company upon its guard. A delay of a day or even a few hours might cause a heavy loss. But the case in hand is one of erroneous transmission, and the loss was by reason of such error. The plaintiffs were receiving daily, and sometimes several times daily, telegrams of a similar character regarding stock. There was enough upon its fact to indicate to the operator that it referred to sheep to be shipped to Philadelphia, and their price.

Judgment affirmed.