## Richmond.

### Western Union Tel. Co. v. Va. Paper Co.

#### February 5th, 1891.

1. CONTRIBUTORY NEGLIGENCE—*Definition— Rule.*—Where want of ordinary care on plaintiff's part (*i. e.*, such care as an ordinarily prudent man may reasonably be expected to exercise under similar circumstances) contributes in any degree to cause the injury, he cannot recover.

2. TELEGRAPH COMPANIES—*Negligence—Liability.*—Manager of Straw-Board Association telegraphed a member that price of straw board had been advanced, and a few hours later, that old price had been restored. About midnight of same day, telegraph company, by mistake, sent him a copy of first telegram marked "Dup.": *held*, member was entitled to presume the last telegram to be an original dispatch, and his failure to detect it as a duplicate was not such want of ordinary care as prevented him from recovering damages for losses resulting from the mistake.

3. PRACTICE AT COMMON LAW—*New trial.*—Where judgment has been entered on verdict for plaintiff, subject to court's opinion on demurrer to evidence, plaintiff, not moving in court below for a new trial, cannot here insist that the damages allowed him by verdict are too small. Without such motion below, this court cannot award a new trial.

Error to judgment of circuit court of city of Richmond, rendered November 21st, 1889, in action of trespass on the case, wherein the Virginia Paper Company was plaintiff, and the Western Union Telegraph Company was defendant. The action was for damages for loss resulting from the negligent act of the defendant, in sending out from its Richmond office a message, in fact a duplicate, which the plaintiff received and acted upon as an original message. The verdict and

judgment being for the plaintiff, the defendant brought the case here on writ of error and *supersedeas.* Opinion states the case.

*Robert Stiles* and *S. L. Kelly*, for the plaintiff in error.

*J. A. Cabell*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

The case, as disclosed by the record, is substantially this:

During the time covered by the evidence the plaintiff was a member of the "Union Straw-Board Association," which, on the 13th and 14th of February, 1889, was in session at Toledo, Ohio, at which meeting the question as to the prices to be put upon straw boards was taken up and discussed with considerable feeling. It was the duty of the general manager, James E. Hayes, to immediately notify by telegraph the members and agents of the association throughout the country of all changes in the prices fixed upon. Accordingly, on the 13th of February, Hayes sent to the plaintiff, through the defendant, the following message: "Price advanced to seventy dollars; takes effect immediately." This message was received at the office of the defendant, in this city, after midnight of that day, and was delivered to the plaintiff on the morning of the 14th. About one o'clock P. M. of the last-mentioned day the plaintiff received through the defendant a second message from Hayes, dated the same day, which was in these words: "Resolution advancing prices rescinded; prices remain as before." About midnight of the same day there was sent to the residence of Mr. Montague, the president of the paper company, in this city, from the office of the defendant, what purported to be a third message from Hayes, the body of which was an exact duplicate of the first message above-

mentioned, and which, therefore, was in these words: "Price advanced to seventy dollars; takes effect immediately."

This message, although supposed to be an original message, was, in fact, a duplicate of the first, and was sent out from the defendant's office by mistake. One of the defendant's witnesses explains that it was ordered from Baltimore, the last relay office on the defendant's line between Toledo and this city, in order to supply a missing number from their message files in the office here, and that by mistake it was sent from the operating room to the business room, where it was sent out and delivered, the night it was received.

The president of the Paper Company, however, supposing it to be an original message, and being aware that the Straw-Board Association was in session, and that it was discussing the matter of prices, concluded that prices had been first advanced to seventy dollars per ton, then put back to the old figures, and again advanced to seventy dollars. Accordingly, he, the next day, advanced the price on straw-boards in this city to seventy dollars, and afterwards refused several orders at the old price, which orders, had they been filled, as they would have been but for the delivery of the duplicate message, would have yielded the Paper Company in commissions $567.39.

It was not until several days afterwards that the error was discovered. The first intimation the company had of it was through a communication from a North Carolina firm, to whom the company had quoted the above mentioned price. This communication, which is dated February 18, 1889, and addressed to the Paper Company, is in these words: "You advise us that straw-boards have advanced to $70, but you evidently neglected to inform us that this advance had been reconsidered, and that prices remain as before. We were thoroughly posted on the advance and of the withdrawal of the advance at the time it was made."

Immediately upon receipt of this communication, the com-

pany telegraphed to General Manager Hayes for an explanation, who promptly replied that prices were the same as before. An explanation was then sought of the defendant, when for the first time it was discovered that message No. 3 was a duplicate, and that it had been sent out by mistake.

·Soon afterwards the present action was instituted. The defendant pleaded the general issue, upon which plea issue was joined. After the evidence had been closed, the defendant demurred to the evidence, in which demurrer the plaintiff joined. The jury thereupon assessed the damages conditionally at $600, and the court, overruling the demurrer, gave judgment for the plaintiff for $600, with interest and costs, which is the judgment appealed from, and of which both parties· complain.

The defendant in error, the plaintiff below, complains of the judgment, on the ground that the damages awarded are too small. But as there was no motion to set aside the verdict in the court below, this complaint comes too late. A case in point is *Humphreys* v. *West*, 3 Rand., 516. In that case it was said that where there is a demurrer to evidence, a writ of enquiry of damages may be awarded, or the jury then impanelled may assess the damages conditionally; but that in either case the question as to the *quantum* of damages is for the jury, subject to the superintending control of the court to grant a new trial in case the damages awarded are excessive. It was further said, however, that the court is not bound to grant a new trial *ex mero motu;* that that can be done only upon motion, and, therefore, that without such a motion in the trial court, the appellate court cannot grant a new trial, as that would be to reverse the judgment of an inferior court on a motion here, which was not made to the court, and of course on a motion in which that court committed no error.

What was said in that case as to the power of the court to grant a new trial where the damages are excessive, equally applies to a case wherein the damages awarded are too small,

inasmuch as the statute, passed since the decision of that case, expressly provides that a new trial may be granted as well in the one case as the other. Code, section 3392. Hence, although in the present case the plaintiff excepted at the trial to the refusal of the court to give certain instructions to the jury as to the assessment of damages, its subsequent failure to object to the verdict must be considered as a waiver of the exception.

The sole defence set up by the Telegraph Company, and relied upon here, is that the plaintiff was guilty of such contributory negligence as to defeat a recovery. A careful consideration of the case, however, leads us to the conclusion that this position is untenable.

According to the established definition, contributory negligence consists, in contemplation of law, in such acts or omissions, on the part of the plaintiff, amounting to a want of ordinary care, as concurring or co-operating with the negligent acts of the defendant are a proximate cause of the injury complained of. Unless, therefore, the evidence in the present case shows such want of care on the part of the plaintiff, its right to recover is clear, for the defendant's negligence is conceded. Has the plaintiff, then, been guilty of omitting to use such care? Extraordinary care is not required. Therefore, the question, stated differently, is, Has the plaintiff failed to exercise such a degree of care as an ordinarily prudent man might reasonably be expected to exercise under similar circumstances? The rule is sometimes stated to be, that if the negligence of the plaintiff contributed *in any degree* to cause the injury, there can be no recovery. But this statement is inaccurate and misleading. A more accurate statement is, that not slight negligence, but *any want of ordinary* care will defeat the action; and by this test the present case must be determined.

It is also to be observed in this connection that negligence is not an absolute but a relative term. Hence, what will amount to proof of the charge is necessarily a question of fact depending upon a great variety of circumstances which the

law cannot define. *Carrington* v. *Ficklin's Ex'or*, 32 Gratt., 870 ; *R. & D. R. R. Co.* v. *Medley*, 75 Va., 499. Each case must, therefore, be determined upon its own circumstances.

In the present case the principal point relied on to show contributory negligence are these, viz.: (1.) That the message bore on its face evidence of being a duplicate; and (2) the delay of the plaintiff in calling upon the defendant for an explanation.

Omitting the formal printed part, the message, as delivered, was in this form :

| "Number 120 B. | Sent by Cn. | Rec'd by O. | | Check. 8 paid. |
|---|---|---|---|---|

Feb. 14, 1889.

Received at 1300 E. Main St., Richmond, Va., 6:56 p.

Dated Toledo, O , 13.

To Virginia Paper Co., Richmond."

Then follows what has already been quoted.

In the argument here the duplicate itself was exhibited for the inspection of the court, from which it appears that the three letters "Dup" were written in ink just above the first-mentioned date, and also across the printed form near the top of the paper. These letters are an abbreviation used in telegraphy for the word "duplicate." No order for a duplicate, however, had been given by the plaintiff, and there is nothing to show that a duplicate message had ever before been sent out by the defendant to the plaintiff, or that the officers or agents of the plaintiff knew the meaning of the abbreviation. The secretary of the plaintiff, Mr. Meredith Montague, testifies he thought they were telegraphic "hieroglyphics," and paid no attention to them. And although the messages were exhibited, a day or two afterwards, by Montague to Major Nor-

man Randolph, a large and successful manufacturer of paper boxes in this city, and a customer of the plaintiff, the fact that one was a duplicate never occurred to either of these gentlemen, although they probably examined them several times.

Randolph testifies that in response to an order from him to the plaintiff for straw boards, Montague called upon him at his place of business, taking with him the three telegrams which they read together. "I receive a great many telegrams," he says, "and certainly never would have discovered that the one in question was a duplicate. It would have been to my advantage," he adds, "to have discovered it, because if I could have bought of the plaintiff at the old price, instead of having to place my orders elsewhere, I would have saved $50 or $75 in freight paid on boards purchased at a distance, from parties who were not members of the Straw Board Association and bound by its prices."

It is contended, however, for the defendant, that the words and figures, "dated Toledo, O., 13," on the face of the message, were sufficient to show to any man of ordinary intelligence and prudence that the message was dated the 13th of February, or the day before the second message which announced that the resolution advancing prices had been rescinded.

Whether or not, under ordinary circumstances, this would be sufficient evidence of that fact, it is unnecessary to inquire. We do not think it so in the present case, because here the circumstances are peculiar. The officers of the Paper Company knew the association was in session, and that it was discussing with a warmth the subject of prices. They also knew from previous dispatches that its action had been vacillating. The first dispatch informed them that prices had been advanced; the second, received only a few hours afterwards, that the old prices had been restored. So that a subsequent announcement, which implied that prices had been again advanced, was not calculated to excite surprise or to suggest in-

quiry, or even close scrutiny, any more than the announcement contained in either of the former messages.

The plaintiff, moreover, had no reason to anticipate negligence on the part of the defendant. On the contrary, the natural presumption was that the defendant had acted with due care. The nature of the business of a telegraph company requires it to act with such care, and it holds itself out accordingly. Most important privileges and franchises are conferred upon such companies by the State, and the confidence of the public which they invite, and which is generally reposed in them, is a source of no small remuneration to them.

The defendant, therefore, in sending out the message in question tacitly, at least, represented it to be an original dispatch, and that it had been duly and correctly transmitted, and upon that representation the plaintiff relied. And why should it not have relied upon it? To whose mind would it probably have occurred that the defendant had taken the pains to deliver, at midnight, *a duplicate* of a message received the day before? We think, in view of all the circumstances, the case comes fairly within the principle that where the defendant by his own negligent act has thrown the plaintiff off his guard, and given him good reason to believe that the negligence is not needed, he ought not to be heard to say that the plaintiff's lack of negligence contributes to the injury. Beach, Cont. Neg., sec. 23; 1 Shearm. & R., Neg., sec. 91. At all events, if the plaintiff has been guilty of negligence at all, it is slight negligence only, not amounting to a want of ordinary care, and that, as we have seen, is not sufficient to defeat the action.

The judgment is affirmed.

JUDGMENT AFFIRMED.