WESTERN UNION TELEGRAPH COMPANY v. M. C. SPIVEY.

No. 1337.   Decided December 5, 1904.

**Telegraph Company—Error in Transmission—Contract—Measure of Damages.**
    Through an error in transmission of a telegram an agent of the sender
purchased a stock of goods, at 5 per cent more on invoice price than he was
authorized to give by the message as written.   The measure of damages was
the difference between the price authorized and the value of the goods, not to
exceed, however, the difference between the price authorized and that paid
in consequence of the mistake.   (Pp. 308-310.)

Certified questions from the Court of Civil Appeals for the Fifth
District.

*N. L. Lindsley,* for appellant (*Geo. H. Fearons,* of counsel).—Where
the evidence shows that a stock of goods has been purchased at a certain
price on the dollar, and it appears that the said stock of goods was pur-
chased with a view of selling to the public for a profit, there can be no
recovery against the telegraph company for a mistake made in the trans-
mission of a message whereby plaintiff paid five cents more on the dol-
lar than he intended to pay, where it does not appear that the goods have,
been sold at a loss.   Tel. Co. v. Bell, 59 S. W. Rep., 918.

*Wheeler & Cunningham,* for appellee.—Where a party at one place
delivers to a telegraph company for transmission to his agent at another
place a telegram instructing said agent to buy a stock of goods at a
certain figure on the dollar, which was the full market value of same,
and through the negligence and want of due care of said telegraph com-
pany said message is changed so that when delivered to said agent it
authorized him to pay a larger sum on the dollar for the stock of goods
than was permitted by the telegram which said principal filed, and said
agent, relying on the correctness of said telegram as received, pur-
chased said stock of goods at a price in excess of the figure authorized
in the original telegram and in excess of the market value of said goods,
the telegraph company is liable to the said principal in damages for the
difference between the amount paid for said goods and the cash market
value of same, the price paid being in excess of the amount authorized
to be paid by the original telegram and the goods having a fixed market
value.

WILLIAMS, ASSOCIATE JUSTICE.—Certified questions from the
Court of Civil Appeals for the Fifth District, as follows:
    "Appellee instituted this suit originally in the Justice Court of
Fannin County, Texas, to recover damages alleged to have been sus-
tained by reason of an error committed by appellant in the transmission
of a telegraphic message.   An appeal was taken from the judgment
rendered in the Justice Court to the County Court, where judgment was

rendered for appellee against appellant for the sum of $165, and from that judgment an appeal was prosecuted to this court.

"The facts are that appellee lived at Bonham and was desirous of purchasing a stock of goods at Whitesboro owned by the Davis Furniture Company, and sent his agent, R. H. Cumby, there to examine the stock and ascertain the price, etc. The owner of the goods demanded 75 cents on the dollar of the invoice of said goods, and Cumby communicated that fact to appellee. In response to this communication appellee delivered to appellant at Bonham, Texas, to be transmitted to his agent, Cumby, at Whitesboro, the following message: 'R. H. Cumby, care Mr. Davis Furniture Company, Whitesboro, Texas: Sixty five cents is last and best offer if won't take that come back have another deal. (Signed) M. C. Spivey.' The message when delivered to Cumby had been changed and read (omitting the address) : 'Seventy five cents is the last and best offer if won't take that come back have another deal. (Signed) M. C. Spivey.'

"The message was intended, and so understood, to mean that Cumby was to offer 65 cents on the dollar for the stock of goods according to the amount of the invoice thereof and no more, but the word 'sixty' having been changed to 'seventy' in the transmission thereof, Cumby was misled and caused to believe that appellee was willing to pay 75 cents on the dollar for said goods and that he was authorized to offer that amount for the goods. By reason of the mistake in the telegram Cumby was induced and caused to offer in further negotiations for the purchase of the goods, 70 cents on the dollar of their invoice price and succeeded in getting them for that sum. The goods invoiced $3300 and appellee paid $2310 for them; being $165 more than he had instructed his agent Cumby to pay for them according to his telegram as delivered to appellant's agent at Bonham, and $165 more than he would have paid for them had the mistake in the telegram not have been made and the trade closed by his agent. Appellee alleged and the proof shows that the goods were worth at Whitesboro, at the time appellee's agent bought, 65 cents on the dollar of their invoice price, or $2145, and no more. There was no proof, however, that the stock of goods could have been purchased from the owner at the time appellee's agent bought for 65 cents on the dollar or less than the amount he paid for them. Appellee had not sold the goods at the time of the trial below. He was selling them out at retail and could not say whether he would be able to realize as much or more than he gave for them or not. At a former day of the present term this court affirmed the judgment of the court below without a written opinion, but on motion for a rehearing our attention has been specially called to the case of the Western U. T. Co. v. Bell, 24 Texas Civ. App., 573, 59 S. W. Rep., 918.

"We do not concur in the opinion in the Bell case, supra, and believe it is in conflict with our views and decision in this case. For that reason we deem it our duty to certify this case to the Supreme Court.

"Question 1. What is the measure of appellee's damages in this case?

"Question 2. Is the measure of his damages the difference between the 65 cents on the dollar ordered to be paid for said goods according to the telegram as delivered to appellant at Bonham and the 70 cents on the dollar paid by reason of the mistake in the transmission of said telegram?"

1. The measure of damages is, of course, the loss sustained by appellee in the purchase of the goods, so far as such loss is attributable to the mistake in the telegram. As appellee authorized the payment of 65 cents, and, as a result of the mistake, was caused to pay 70 cents, no loss beyond the difference between the two prices can be recovered, for the reason that only the sum represented by such difference can be regarded as lost through appellant's fault. Whether or not the whole of that sum can be recovered depends upon the answer to the question whether or not appellee really lost that much. His actual loss can not exceed the difference between the price paid and the value of the goods purchased. If the goods were worth less than the amount paid for them, the difference, not to exceed the difference between the authorized price and the paid price, is the measure of damages.

2. As indicated in the preceding answer, the measure stated in this question is not abstractly the correct one, although it produces the correct result if the price paid for the goods was their value. Since it does not appear that the goods could have been had at the price offered by appellant, his damage did not result from the loss of a bargain, but, if at all, from an actual trade to which he was committed, and his loss in that trade is to be ascertained in the way indicated above. This fully answers the questions asked, and we are not at liberty to consider other phases of the case discussed in the argument.