McCARTY et al., Respondents, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals, January 16, 1906.

1. **TELEGRAPH COMPANIES:** Foreign Corporations: Failure Correctly to Transmit Message. Section 1259, Revised Statutes of 1899, making telegragh companies organized under the laws of this State liable for failure or neglect in copying and transmitting dispatches, does not ·apply to foreign telegraph companies.

2. ———: ———: ———: But a foreign telegraph company is liable at common law for such damages as are fairly and substantially caused by the neglect of its agents in transmitting messages.

3. ———: .———: ———: The owner of a lot of mules proposed to sell them for $135 each and the purchaser agreed to wire on his return home whether he accepted the proposition.

On reaching home he sent the following telegram. "Will give One Thirty for mules answer quick." The telegram as sent read, "Will leave One Thirty for mules answer quick." The seller inferred that his proposition was accepted and that the purchaser would start at 1:30 o'clock to receive the mules. The mules were delivered and the purchaser paid 130 apiece for them. *Held* that the seller could recover against the telegraph company damages amounting to $5 a head for the mules on proving that they were worth $135 each at the time.

Appeal from Shelby Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*George H. Fearons* and *Charles E. Yeater* for appellant.

In the absence of a statutory rule to the contrary the addressee of a telegram can maintain an action for a failure to correctly transmit it only when the company has knowledge that it is for his benefit; and where the benefit to the addressee would be incidental to carrying out the contract but was not the cause of making the contract an action cannot be maintained for the breach; consequently, in the absence of such allegations and proof, the objection to the introduction of any evidence under the petition and the demurrer to the plaintiffs' evidence should have been sustained. Markel v. Tel. Co., 19 Mo. App. 85; Frazier v. Tel. Co., 78 Pac. 330; Tel. Co. v. Wood, 57 Fed. 471. It appears from the plaintiffs' evidence that there was no mutual contract between the McCartys and Pendleton, and instead of a meeting of their minds there was a misunderstanding, but as Pendleton received the mules the law will raise an implied contract to pay their value and Pendleton is liable to plaintiffs for any excess of the market value over $130 per head, the amount he paid, and plaintiffs' right of action lies against Pendleton and not against the telegraph company. Fruit Co. v. Tel. Co., 70 Pac. 658; Tel. Co. v. Cereal Co., 23 O. C. C., 516.

*Dysart & Mitchell* for respondent.

The plaintiffs are not barred from claiming special damages in this case. Telegraph companies are common carriers of messages and as such are granted by the statutes of this State certain privileges such as condemnation of land for the purpose of their business, etc. and it owes the public certain duties. Secs. 1252, 1255, 1259, R. S. 1899. And foreign corporations are subject to all liabilities, restrictions and duties as corporations organized under the laws of this state. Sec. 1024, R. S. 1899; Hughes v. Tel. Co. 79 Mo. App. 133. In this case the company admits that it changed the telegram and gives no reason, good or otherwise, for its changing the telegram which was written in plain English, and there was no misunderstanding of the telegram except that caused by misfeasance of the defendant in changing the telegram, and further it is admitted and proven that the plaintiffs acted thereon to their detriment and the defendant's liability for damage to the plaintiffs was thereby made complete. Tel. Co. v. Dryburg, supra; Thompson on Law of Electricity, sec. 428; Smith v. Tel. Co., 57 Mo. App. 259; Croswell on the Law Relating to Electricity; secs. 462, et seq; Tel. Co. v. Dubois 128 Ill. 248; Fererro v. Tel. Co., 9 App. D. C. 455, 35 L. R. A. 548, and cases cited. Plaintiffs maintain that the sender of a message changed in its transmission by the company, which message is acted on by the receiver to his detriment, is not responsible for the injury. The injury is occasioned by the tort of the company and it must respond to the damages. Gray on Telegraphic Communication, sec. 106; Reed v. Tel. Co., 135 Mo. 661; Tel. Co. v. Shelten, 71 Ga. 760; Tel. Co. v. Flint River, etc., Co. 114 Ga. 576.

STATEMENT.—Plaintiffs are farmers and dealers in mules at Clarence, Missouri. In February, 1904, they had for sale, on their farm, from eighty to ninety head of

marketable mules. On February nineteenth, E. M. Pendleton, of East St. Louis, a buyer and seller of mules, visited plaintiffs' farm with a view of purchasing their mules. Negotiations were entered upon in which plaintiffs offered Pendleton the pick of seventy-five head of the mules at one hundred and thirty-five dollars per head. No other price was offered, and Pendleton did not then agree to take the mules, but said he would wait until he returned to St. Louis before deciding what he would do. On arriving at Union Station, St. Louis, in the evening of the same day, he delivered the following telegram to the defendant for transmission to the plaintiffs:

"Union Station, Feb. 19, 1904.

"McCarty & Sons, Clarence, Mo.

"Will give one thirty for mules. Answer quick.

[Paid.]                              "E. M. PENDLETON."

The telegram as transmitted and delivered by defendant is as follows:

"8 paid 2-19-1904.

Dated Union Station, St. Louis, Mo., 19—

"To McCarty & Sons, Clarence.

"Will leave one thirty for mules. Answer quick.
                                    "E. M. PENDLETON."

Plaintiffs, on receiving the telegram, inferring that Pendleton had concluded to take the mules at the price named, (one hundred and thirty-five dollars each) wired him to come at once. On February twenty-first, Pendleton returned to Clarence, selected seventy-five mules from the lot and shipped them to East St. Louis, he and M. McCarty accompanying the shipment. The mules and the parties arrived in East St. Louis in due time and Pendleton, supposing he had bought the mules at one hundred and thirty dollars per head, proceeded to sell, and sold most of them before paying or offering to pay McCarty the purchase price. When he came to pay McCarty, Pendleton counted out what he supposed was the purchase price. McCarty objected and said,

"This is not right." Pendleton replied, "That is what I bought them for. I told you in the telegram." Inquiry about the telegram was then made by Pendleton and McCarty and the error in its transmission discovered. Pendleton being unwilling to pay more than one hundred and thirty dollars per head for the mules, and most of them having been sold and removed, McCarty accepted one hundred and thirty dollars per head and then brought this suit to recover of the defendant the difference between one hundred and thirty and one hundred and thirty-five dollars per head for the mules, or the sum of five dollars per head.

The evidence is all one way that the market value of the mules, on February nineteenth and twenty-first, 1904, at Clarence, Missouri, was one hundred and thirty-five dollars per head, and it is shown that nothing at all passed between plaintiff and Pendleton, on February twenty-first, when he returned for the mules, as to the price, the plaintiffs supposing from Pendleton's telegram that he had accepted their offer of the mules at one hundred and thirty-five dollars; and Pendleton supposing from his telegram as delivered to the defendant that plaintiffs had accepted his offer of one hundred and thirty dollars per head.

At the close of the plaintiffs' evidence, defendant offered an instruction, in the nature of a demurrer to the evidence, which the court refused. Defendant offered no evidence, and the jury returned a verdict for three hundred and seventy-five dollars for plaintiffs. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. Section 1259, R. S. 1899, provides: "Every telephone or telegraph company now organized, or which may hereafter be organized under the laws of this State, shall be liable for special damages occasioned by the failure or neglect of their operators or servants in receiving, copying, transmitting or delivering dispatches," etc. It is not shown

whether or not the defendant was incorporated under the laws of this State, and it is contended by defendant that this section applies only to telephone and telegraph companies organized under the laws of this State. The section so reads, and it is not clear that we have any statute subjecting foreign corporations doing business in this State to the same restrictions, liabilities and duties, which are by law imposed on corporations of like character, organized under the laws of this State. Section 1024, R. S. 1899, subjected foreign telephone and telegraph companies doing business in this State to the provisions of section 1259 supra, but the section was repealed by the Legislature in 1903, and a new section enacted in its stead which fails to contain any clause or proviso subjecting foreign telephone and telegraph companies doing business in this State to the provisions of section 1259. But, independent of any statute, the defendant is liable at common law for such damages as are fairly and substantially caused by the negligence of its servants in the transmission of messages. [Hughes v. W. U. Tel. Co., 79 Mo. App. 133; Smith v. W. U. Tel. Co., 57 Mo. App. 259; Fcrerro v. W. U. Tel. Co., 35 L. R. A. 548.]

Where the message shows on its face, as did the one delivered by Pendleton to the defendant, that a business transaction is contemplated and that negligence in its transmission may reasonably be attended with loss, the plaintiff is entitled to recover all damages which result to him by reason of defendant delivering to him a spurious telegram, on the principle that in actions ex delicto the plaintiff is entitled to recover such damages as naturally flow from defendant's negligence. In other words, the plaintiff has a right to be placed in the same position he would have been in had defendant's agents correctly transmitted the telegram. Had this been done, the mules would not have been delivered to Pendleton, and the presumption is that plaintiffs would have been able to have sold the mules at what the evidence shows was their market value at Clarence, one hundred and thirty-five

dollars per head. Their loss or damage, therefore, was five dollars on each mule. But it is contended by defendant that the plaintiffs were negligent in delivering the mules to Pendleton without first having from him a verbal acceptance of their offer of the mules at one hundred and thirty-five dollars per head. We cannot agree to this contention. Plaintiffs offered to sell the mules to Pendleton on his first visit for one hundred and thirty-five dollars per head. No other price was named or discussed, and Pendleton went away saying he would wire plaintiffs from St. Louis. The spurious telegram informed plaintiffs that he had concluded to accept their offer and would leave at one-thirty for the mules, therefore, there was no occasion for further discussion or negotiations. Plaintiffs made an offer and, according to the spurious telegram, Pendleton accepted it and nothing remained to be done to close the trade but to deliver the mules and receive the pay. Payment was postponed until after the mules were shipped and mostly sold by Pendleton, too late to recall the mules or correct the mistake caused by the negligence of defendant in transmitting the telegram. This mistake caused the damages which plaintiffs recovered, and there being no reversible error in the record, the judgment is affirmed. All concur.