[No. 10761. Department Two. April 28, 1913.]

JAMES HENRY, *Respondent*, v. WESTERN UNION TELEGRAPH COMPANY, *Appellant*.[1]

TELEGRAPHS AND TELEPHONES — MESSAGES—ACTIONS—DAMAGES— CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. In an action against a telegraph company for erroneously transmitting a message from plaintiff's agent for the purchase of two lots of sheep at $4.70 for January delivery and $5.00 for February delivery, so that the message delivered read $4.20 for January delivery, the contributory negligence of the plaintiff in instructing purchase of the sheep without having the message repeated or being put on inquiry by the discrepancy in the prices, is for the jury, where it appears that the plaintiff had but recently refused an offer at $4.70, there was evidence that the market price for January delivery was $4.25, and the January sheep would be grass fed, while there would be considerable expense attached to keeping over the February lot.

SAME—MEASURE OF DAMAGES. The measure of damages for erroneously transmitting a telegram from plaintiff's agent that a lot of sheep could be purchased at $4.70 per hundred, so as to read $4.20, whereby they were purchased for use in plaintiff's wholesale butcher business, at the higher price, which exceeded the market price, is the difference between the price paid and the market price, and not the amount of plaintiff's loss, if any, on the purchase.

EVIDENCE—MARKET VALUE—SUFFICIENCY. In an action for erroneously transmitting a telegram as to the purchase of sheep, thereupon bought for plaintiff, evidence of the market price in Montana at a certain time is sufficiently established where both plaintiff and his manager testified, without contradiction, that the market price

[1]Reported in 131 Pac. 812.

there was fixed by the prices in Chicago and Portland, less freight, shrinkage, and expenses, amounting to about one dollar per hundred, that, while they could not recall the exact prices on the day in question, it was about $5.25 in Chicago and Portland, as they on that day made an offer of $4.20 in Montana which they estimated to be slightly under the market price.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 24, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages. Affirmed.

*George H. Fearons* and *Hughes, McMicken, Dovell & Ramsey,* for appellant.

*John E. Ryan,* and *Grover E. Desmond,* for respondent.

Ellis, J.—This is an action to recover damages alleged to have been sustained through error in the transmission of a telegram. The plaintiff is a wholesale and retail butcher and packer in the city of Seattle, and in the conduct of his business employs livestock buyers throughout the several states of the northwest. Among these, in the month of December, 1910, was one C. F. Walker, employed as a cattle buyer in Montana. He was not an expert sheep buyer, but in buying sheep he would report their condition and the price asked, and be guided by the plaintiff's instructions as to purchases. Early in December this buyer was directed by the plaintiff to investigate a certain band of 2,500 sheep near Dillon, Montana, referred to throughout the record as the "Maurer sheep." On December 5, 1910, Walker wired the plaintiff to the effect that these sheep could be purchased, 1,000 for delivery January 1st, at $4.70 a hundredweight; 1,000, February 1st, at $5.30 per hundredweight; and the balance, February 20th, at $5.70 a hundredweight. On the next day, the plaintiff answered: "Maurer sheep too high. Could not use them." On December 7th Walker delivered to the defendant's agent at Dillon for transmission to the plaintiff a message reading as follows:

"45 Collect Night Letter        Dillon Mont 12-7 190
"To James Henry 818 Western Ave Seattle

"I contracted three loads of steers and calves at four and five delivered Jan fifteenth Belgrade grain fed stuff. I think I can contract Maurer sheep thousand Jan first four seventy thousand Feb. first five. Anser as soon as you get this.

"C. F. Walker."

As delivered to the plaintiff at Seattle, that portion of the message referring to the sheep read:—"I think I can contract Maurer sheep thousand Jan. first *four twenty*, thousand Feb. first five." Plaintiff, in response, wired as follows:

"C. F. Walker,
"Dillon Montana                          12-8-10
"Contract all good cattle you can get some bulls Get Idaho Falls Cattle. If you can get proper shrinkage buy Maurer sheep  Cant you get some good lambs also load small calves answer  James Henry."

Upon the receipt of this telegram, Walker immediately entered into a contract to purchase the sheep in question at the price of $4.70 per hundredweight, the total weight of the sheep contracted for January delivery being 115,905 pounds. Walker telegraphed to plaintiff that he had bought the sheep, but as the price was not again given, it was several days before the error in the transmission of the message of December 7th was discovered. The plaintiff's evidence tended to show that the market price of the sheep at Dillon for January 1st delivery was approximately $4.25. The trial resulted in a verdict for the plaintiff for the sum of $522.17, this being the difference between the market price and the price paid, plus sixty cents paid for the transmission of the message. Motions for a nonsuit, a new trial and for judgment notwithstanding the verdict were made at appropriate times and overruled. Judgment having been entered on the verdict, defendant appealed.

The several assignments of error are all directed to two

grounds, a consideration of which will be determinative of the case.

(1) It is first contended that the respondent was not misled by the error in the transmission of the telegram. As to the actual fact of deception, the respondent and his manager, who consulted and determined upon purchases, both testified, in substance, that they were misled by the erroneous telegram of December 7th; that they would not have authorized the purchase at $4.70 the hundredweight; and that when they authorized the respondent's purchaser in the field to contract for these sheep, it was in the belief, induced by the telegram as received, that the purchase was being made at $4.20 a hundredweight. The appellant argues, however, that the respondent should not have been misled; that the difference between the prices stated in the two telegrams as received, and the discrepancy between the price for January 1st delivery and February 1st delivery, as stated in the erroneous telegram, were so great as to put an ordinarily prudent man upon inquiry and make it his duty to have the telegram repeated or bear the consequences of his failure to do so. This argument presents the simple question of contributory negligence as a defense. It must be determined upon the same principle as when the same question arises in other relations. Jones, Telegraph and Telephone Companies, § 314.

Were these discrepancies so extraordinary as to challenge the attention and excite the caution of a man of ordinary business prudence and experience? The uncontradicted evidence shows that sheep for January delivery would be very little corn fed, that they would be practically grass fed sheep, and that the expense of feeding to keep in fit condition for later deliveries would be much greater. The jury might easily find from this circumstance that the caution of a man of ordinary prudence would not be aroused by the wide difference in price for January 1st and February 1st deliveries contained in the erroneous telegram. Nor can

we say, in view of respondent's flat refusal to purchase at the prices stated in the prior telegram, that the discrepancy in prices between the offer contained in that telegram and the later erroneous message should be held, as a matter of law, to impose notice of the error. Was it not natural that the respondent, as an ordinarily prudent man, would assume that his purchasing agent, fortified by the refusal to consider the price stated in the prior message, had succeeded in reducing the offer to what the evidence shows was about the market price for January delivery? There was obvious ground for reasonable differences of opinion on these things. The question was properly submitted to the jury and we are concluded by the verdict. *Tobin v. Western Union Tel. Co.*, 146 Pa. St. 375, 23 Atl. 324, 28 Am. St. 802; *Garrett v. Western Union Tel. Co.*, 83 Iowa 257, 49 N. W. 88; *Western Union Tel. Co. v. Beals*, 56 Neb. 415, 76 N. W. 903, 71 Am. St. 682; *Western Union Tel. Co. v. Virginia Paper Co.*, 87 Va., 418, 12 S. E. 755.

(2) It is next contended that, assuming that he was misled, there was no competent proof that respondent was damaged. The argument is that the respondent might have made a profit on these sheep at the price actually paid; that there being no evidence as to whether he did or not, there was no evidence that he was damaged. It seems to us that the matter of profits was not involved. The respondent did not sue for loss of profits, but for damages suffered by reason of the purchase to which he was committed through appellant's negligence. That the loss of profits could not be the correct measure of damages is demonstrated by the obvious fact that even if it had been proven that there could have been no profit on a purchase at $4.20 a hundredweight, still the respondent would have been damaged by the purchase at $4.70 a hundredweight in just the amount in which that price exceeded the market price at the time and place of the purchase. On the other hand, if it had been proven that the sheep, as mutton, were resold by the

respondent at a clear profit above the $4.70 a hundred paid, his profits would be diminished by just the excess of the price paid over the market price. His loss in either case would be the same. The message itself gave notice to the appellant that it might become the basis of a business transaction, and that a failure to properly transmit it might result in a purchase at a price greater than intended to be paid; and that in such a case, whatever the profit might be, there would be a certain loss equal to the excess of the price paid over the market price. The only measure of damages, therefore, both free from uncertainty and speculation, and within the reasonable contemplation of the sender and the appellant when it undertook to transmit the message, was the excess of the price paid through its error over the market price of sheep at Dillon on December 7, 1909, for January delivery, plus the cost of sending the message. Nothing less would compensate the respondent; anything more would penalize the appellant. The inevitable tendency to this conclusion was emphasized by a colloquy between the court and appellant's counsel during the argument of the motion for a nonsuit. The contention was made that the respondent had made no effort to minimize the loss. The court asked:

"How could he have minimized the loss? He bound himself on a written contract to take the sheep." And counsel replied: "If he had turned around and immediately sold the sheep for what he could get at the market price he could have recovered from us the difference. As soon as he found the mistake he could have sold them at the market and he could have recovered his actual loss from us. If he kept them, the question is whether he can turn around and say I can take care of these sheep and save myself from loss; I will keep them; I will butcher them and retail them out and save myself from a loss. He may have done that. We don't know in this case. It is up to him to show whether he actually suffered any loss. It is not a question of whether he should be allowed to have made a profit on this transaction."

We can hardly formulate a clearer demonstration than this that the certain loss determinable by the excess of the price paid over the market price, and not the speculative loss contingent upon the profits of a butchering business and the future fluctuations of the meat market, must be the true measure of damages. The minimum attained by the course suggested by counsel would be reached by exactly the same process which we hold fixes the true measure of damages. The minimum so attained is all that this measure requires the appellant to pay. That the measure above stated is the true measure is sustained both by what we conceive to be the better reasons and the more persuasive authorities. This principle, under varying conditions, is exemplified and sustained by the following decisions: *Strong v. Western Union Tel. Co.*, 18 Idaho 389, 109 Pac. 910, 30 L. R. A. (N. S.) 409; *Wallingford v. Western Union Tel. Co.*, 53 S. C. 410, 31 S. E. 275; *Hays v. Western Union Tel. Co.*, 70 S. C. 16, 48 S. E. 608, 106 Am. St. 731, 67 L. R. A. 481; *Reed v. Western Union Tel. Co.*, 135 Mo. 661, 37 S. W. 904, 58 Am. St. 609, 34 L. R. A. 492; *Bowie v. Western Union Tel. Co.*, 78 S. C. 424, 59 S. E. 65; *McCarty v. Western Union Tel. Co.*, 116 Mo. App. 441, 91 S. W. 976; *Western Union Tel. Co. v. Shotter*, 71 Ga. 760; *Turner v. Hawkeye Tel. Co.*, 41 Iowa 458, 20 Am. Rep. 605; *Western Union Tel. Co. v. Landis* (Pa.), 12 Atl. 467; *United States Tel. Co. v. Wenger*, 55 Pa. St. 262, 93 Am. Dec. 751; *Western Union Tel. Co. v. Spivey*, 98 Tex. 308, 83 S. W. 364; *Ayer v. Western Union Tel. Co.*, 79 Me. 493, 10 Atl. 495, 1 Am. St. 353; *Squire v. Western Union Tel. Co.*, 98 Mass. 232, 93 Am. Dec. 157; *Rittenhouse v. Independent Line of Telegraph*, 44 N. Y. 263, 4 Am. Rep. 673.

There are cases which sustain the theory of recovery advanced by the appellant. We have been cited to one, *Western Union Tel. Co. v. Waxelbaum*, 113 Ga. 1017, 39 S. E. 443, 56 L. R. A. 741. It is not convincing. It seems to us that to measure the damages by the difference between the price paid

and the sum realized on a resale at a different time and place under different conditions would in many cases render the telegraph company liable for a loss in excess of that traceable to its error, and in others cause the purchaser to sustain a loss traceable solely to the error in the telegram. The measure which we approve is not subject to these possibilities. Of course, if the market price was equal to or greater than that paid because of the error, there would be no loss traceable to the error; but where it is less, there is an inevitable loss in just that amount, regardless of the actual profits realized through a resale by the purchaser at another time and place and under different conditions.

The contention of the appellant that there was no evidence as to the market price of sheep at Dillon, Montana, at the time of respondent's purchase is not tenable. The evidence shows without contradiction that the market price at Dillon at a given time would be determined by the then market prices at Portland and Chicago by deducting from the market prices at those points, the freight, shrinkage, and other losses and expenses incident to transportation, amounting to about one dollar on the hundredweight, Chicago and Portland being the two competing sheep markets for that part of Montana. While neither the respondent nor his business manager could recall the exact prices prevailing at Chicago and Portland on December 7, 1910, both stated that it was in the neighborhood of $5.25 a hundredweight, and both testified in substance that respondent received current Chicago and Portland quotations, that they knew these prices at that time, and then, on the prices quoted, estimated that a purchase at $4.20 a hundredweight would approximate or be a little under the then market price at Dillon so determined. No evidence was offered to the contrary. This evidence was competent as tending to establish the market price of sheep at that time at Dillon, Montana. *Graham v. Frazier*, 49 Neb. 90, 68 N. W. 367; *Rothrock v. Hunter*, 66

Wash. 543, 119 Pac. 1114; 35 Cyc. 638; 24 Am. & Eng. Ency. Law (2d ed.), 1154.

The weight of this evidence was for the jury, which evidently found that the then market price at Dillon was $4.25 a hundredweight. We cannot say that the finding was not justified by the evidence.

Other claims of error are predicated upon the instructions given by the court. These, however, present the same questions which we have considered in the foregoing discussion, and it will be unnecessary to notice them further. We find no error in the instructions.

The judgment is affirmed.

CROW, C. J., FULLERTON, MAIN, and MORRIS, JJ., concur.